Howard GOOD and Moses
Weiss, Plaintiffs,

v.

GETTY OIL COMPANY, Gordon P. Getty, Trustee of the Sarah C. Getty Trust, the J. Paul Getty Museum, Harold Williams, Sidney R. Petersen, Harold C. Stuart, Henry Wendt, Robert N. Miller, Defendants,

and

Texaco, Inc., Nominal Defendant.

Court of Chancery of Delaware,
New Castle County.

Submitted: May 2, 1986.
Decided: June 12, 1986.

Henry A. Heiman of Heiman & Aber, Wilmington; Lawrence Sucharow, of Goodkind, Wechsler, Labaton & Rudoff, New York City; Joseph H. Weiss (argued), New York City; Jules Brody, of Stull, Stull & Brody, New York City; Barbara A. Podell, of Kohn, Savett, Marion & Graf, Philadelphia; for plaintiffs.

Lawrence Ashby of Ashby, McKelvie & Geddes, Wilmington; David Boies (argued), Francis P. Barron (argued) and Robert W. Feltoon, of Cravath, Swaine & Moore, New York City; for Nominal defendant Texaco, Inc.

TAYLOR,* Designated Vice-Chancellor.

Plaintiffs, two stockholders of Texaco, Inc. [Texaco], acting derivatively on behalf of Texaco, seek to assert a claim against Getty Oil Company, Gordon P. Getty, Trustee of the Sarah C. Getty Trust, The J. Paul Getty Museum and former directors of Getty [collectively Getty defendants]. The suit seeks to set aside indemnity undertakings by Texaco in favor of Getty defendants and to recover Texaco's damages resulting from a judgment entered in favor of Pennzoil Company against Texaco growing out of the acquisition of Getty Oil Company by Texaco. Texaco has moved to dismiss the suit on the ground that plaintiffs made no demand upon Texaco's board of directors before bringing suit and that the complaint fails to allege facts sufficient to excuse such demand.

This case is one of a series of cases filed in this Court which are of particular note because they are the aftermath of a judgment entered in favor of Pennzoil Company [Pennzoil] against Texaco in a Texas Court which awarded compensatory damages of $7.5 billion and punitive damages of $3 billion to Pennzoil.

■ The remedy of derivative action on behalf of a corporation is an encroachment upon the prerogative of the board of directors to manage the affairs of the corporation. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984). It is available in exceptional situations where a matter of corporate concern has not been or may not be resolved through the processes of business judgment* because of disqualifying director personal interest, failure to be properly informed, failure to exercise business judgment, being under an influence which negates business judgment, or taking action which is so contrary to the best interests of the corporation as to disqualify the action as being the exercise of business judgment. *Id.* However, it is available only where a matter involving the corporation has not been or cannot be resolved by the board of directors through the exercise of business judgment which is untainted by personal interest or otherwise disqualified. *Id.* If qualifying business judgment cannot be provided by the board of directors, demand that the board of directors take corporate action is deemed to be futile and a stockholder is permitted to pursue the corporation's claim on its behalf. *Id.*

In order to assure that the availability of derivative actions will be confined to those instances where the assertion of the corporate claim will not or cannot be governed by disinterested business judgment the Delaware Supreme Court has defined areas of inquiry which the trial Court must pursue. *Aronson,* 473 A.2d at 812; and *Pogostin v. Rice,* Del.Supr., 480 A.2d 619 (1984). The first area is whether the directors are disinterested and independent. The second area is whether the challenged transaction otherwise was the product of a valid exercise of business judgment. *Aronson,* 473 A.2d at 812; *Pogostin,* 480 A.2d at 624.

■ Chancery Court Rule 23.1 [1] provides a standard for ascertaining at the pleading stage whether a corporate matter should be resolved by the exercise of informed, good faith business judgment of the board of directors or be resolved through stockholder instigated litigation. The Rule departs from the imprecision generally per-

* Taylor, Judge, sitting by designation pursuant to Del. Const. Art. IV, § 13(2).

1. Rule 23.1. DERIVATIVE ACTIONS BY SHAREHOLDERS

In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

mitted under modern rules of civil procedure. Cf. *Chancery Court Rule 10; Dann v. Chrysler Corp.,* Del. Ch., 174 A.2d 696 (1961). To this end Rule 23.1 requires the complaint to set forth *with particularity* the stockholder's efforts to obtain action by the board of directors and the reason for his failure to obtain the action or for not making the effort. The requirement for particularity extends to the reasons for the stockholder's failure to make a demand for director action. Detail is uniformly recognized as a requisite of particularity. *Webster's Third New International Dictionary,* p. 1647; 67A *C.J.S.* p. 630; *Yoo Thun Lim v. Crespin;* Ariz.Supr., 100 Ariz. 80, 411 P.2d 809 (1966); *Jack v. Wood,* Cal.App., 258 Cal.App.2d 639, 65 Cal.Rptr. 856 (1968); *In re Kauffman Mutual Fund Actions,* 1st Cir., 479 F.2d 257 (1973).

■ The Supreme Court in describing the analysis which the Court of Chancery must make in determining whether a stockholder is entitled to substitute a derivative action in place of directoral business judgment has focused attention on the significance of the detail which is required in the complaint.

> Under the demand futility test, the facts alleged in the complaint are examined to determine whether they create a reasonable doubt that: (1) the directors are disinterested and independent and (2) the challenged transaction otherwise was the product of a valid exercise of business judgment.

*Pogostin,* 480 A.2d at 624; *Aronson,* 473 A.2d 814.

The analysis upon which that determination rests must be the product of a review of the transaction against the factual background of the complaint. *Id.* Again, focusing on the need for factual detail in the complaint as the basis for determining demand futility, the Court stated "If the Court of Chancery in the exercise of its sound discretion is satisfied that a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt

as to either aspect of the *Aronson* analysis, the futility of demand is established and the court's inquiry ends." *Pogostin,* 480 A.2d at 624–625. In order to meet the *Aronson-Pogostin* test the facts of the challenged transaction as well as the facts establishing director disqualification must be set forth in the complaint in sufficient detail to permit the trial Court to apply that test.

This complaint alleges the following wrongs committed by the Getty defendants and the members of the Getty Board of Directors is that (1) they wrongfully aided and abetted Texaco's wrongful acquisition of Getty and subjected Texaco to the [Pennzoil] judgment, (2) they demanded and received an agreement from Texaco which indemnified their actions, and (3) by obtaining the indemnification agreement they aided and induced Texaco directors to breach their fiduciary duty to Texaco. These allegations follow a recital of the Pennzoil judgment against Texaco.

The paragraph of this complaint which plaintiffs rely on to satisfy *Chancery Court Rule 23.1* and the *Aronson-Pogostin* test asserts: (1) all Texaco directors participated in the wrongs alleged; (2) all Texaco directors knowingly participated in and knew of the violations pleaded; (3) all Texaco directors are defendants in other actions charging them with breach of fiduciary duties involving the wrongs alleged in this complaint; (4) Texaco directors wrongfully caused Texaco to indemnify Getty and Getty stockholders and could not faithfully prosecute the claims asserted herein against Getty stockholders. The complaint contains no further allegations supporting demand futility.

This case differs from many derivative cases because the suit challenges a transaction between the corporation (Texaco) and outside parties (Getty defendants) not connected with the corporation (Texaco) or its directors.

There is no contention that the Texaco directors benefitted personally from the alleged wrongful transaction. It is alleged

that the directors participated in the "alleged wrongs". The manner of participation is not particularized. It is also alleged that the Texaco directors knowingly participated in and knew of the violations of the law. Here again, the manner of participation and the nature and extent of the knowledge possessed by the members of the Board of Directors are not particularized. It is also alleged that the directors wrongfully caused Texaco to indemnify Getty defendants and could not faithfully prosecute these claims against Getty defendants. Particularization is also lacking with respect to this allegation as demonstrated by the fact that plaintiffs and Texaco take different positions on the extent of the indemnification. Furthermore, the degree of involvement of the Board in this aspect of the purchase agreement or other specific reasons why the Board could not pursue a claim such as plaintiffs assert have not been set forth.

While director interest or lack of independence is one of the two considerations which are required in a motion such as this, this Court must also consider the substance of the challenged transaction and determine whether reasonable doubt exists that the transaction was a valid exercise of business judgment. This consideration should recognize the directors' "duty to inform themselves, prior to making a business decision, of all material information reasonably available to them" and after being so informed to "act with requisite care in the discharge of their duties." *Aronson*, 473 A.2d at 812.

Plaintiffs rely heavily on the finding in the Pennzoil suit that Texaco knowingly interfered with the Pennzoil-Getty agreement to show wrongdoing by the Texaco directors and to establish demand futility. Texaco points out that the Texas judgment has been appealed and therefore the finding is subject to possible reversal. Further, Texaco points out that the Pennzoil finding rested upon the Texas Court's instruction that Texaco was charged with knowledge of Texaco's agents and representatives regardless of "whether communicated to each other" and that it did not determine the knowledge of the board of directors or the part taken by the Texaco board of directors in the tortious conduct. This alone does not establish the extent of the participation by the board of directors in the transaction or their knowledge or investigation.

■   Plaintiffs also rely heavily on the magnitude of the Pennzoil judgment to justify the bringing of this stockholders' derivative suit. While the parties agree that if the Pennzoil judgment is upheld, it will have a substantial impact upon the operations of Texaco, the mere recital of the existence of the judgment, standing alone, does not meet the *Aronson-Pogostin* test. However, under appropriate pleading it may warrant scrutiny of the facts and a careful evaluation of the factors discussed above to determine whether the reasonable doubt which is requisite to the pursuit of this derivative action may exist.

■   Plaintiffs' specific focus in challenging the board of directors' ability to act in this instance in the indemnification portion of the agreement between the Getty stockholders and Texaco. Indemnification as an adjunct to a business transaction is not illegal or necessarily imprudent—nor is it necessarily prudent. Cf. *Tabas v. Mullane*, D.N.J., 608 F.Supp. 759, 768–9 (1985). From the standpoint of business judgment, the benefits being acquired by the indemnitor, the amount of the indemnification, the risk of indemnification liability, the importance of the acquired benefits to the indemnitor, and the opportunity to acquire the benefits without assuming indemnification are factors which may be considered if invoked by appropriate pleading.

■   It is clear under Delaware law that the fact that directors have been sued because of a corporate transaction from which they gained personal benefit does not necessarily establish demand futility. *Aronson v. Lewis*, 473 A.2d at 818; *Kaufman v. Belmont*, Del. Ch., 479 A.2d 282

(1984); *Haber v. Bell*, Del. Ch., 465 A.2d 353 (1983). Conversely, the fact that the derivative action is against a third person for dealings with the corporation does not necessarily require that the control of the litigation be vested in the board of directors.

■ I an unable to draw from the paucity of the complaint the inferences of demand futility which plaintiffs argue in their brief.

I find that the complaint in its present form does not satisfy the requirements of *Chancery Court Rule 23.1* or the *Aronson-Pogostin* test in that it does not create a reasonable doubt that the directors are disinterested and independent or that the challenged transaction was the product of a valid exercise of business judgment.

Both parties have presented documents and facts via briefs and appendices—and additional facts were injected at the argument—which may be proper considerations in determining demand futility in an appropriate pleading context. The substance of these post-complaint submissions does not appear in the complaint even in rudimentary form. To consider the submitted material in deciding Texaco's motion to dismiss would be to close the Court's eyes to the specific teaching of *Aronson* and *Pogostin*, in view of the dearth of facts in the complaint.

■ In deciding Texaco's motion to dismiss according to the confines of the *Aronson-Pogostin* test, the Court has excluded from consideration all of the post-complaint factual material which has been submitted. Cf. *Chancery Court Rule* 12(b).

*Chancery Court Rule* 23.1 is not merely a rule of pleading, it is rooted in substantive law. *Aronson v. Lewis*, 473 A.2d at 809. However, in view of the policy stated in *Chancery Court Rule* 15 with respect to amendment of pleadings, and in recognition of the significance of the Pennzoil judgment to Texaco, the Court will accord to plaintiffs the opportunity to amend the complaint to present facts satisfying the *Aronson-Pogostin* test.

Since the entire complaint has been examined in considering this motion, I point out that the pleading particularization requirement is not confined to *Chancery Court Rule 23.1* and that a similar requirement exists with respect to subjects enumerated in *Chancery Court Rule* 9. Since this decision anticipates that plaintiffs may amend the complaint (cf. *Chancery Court Rule 15*) I point out the necessity for making such allegations with particularity.

In summary, the complaint as a stockholders' derivative action fails to meet the requirement that demand on the board of directors for redress must be made or excused. Texaco's motion to dismiss is granted, subject to leave for plaintiffs to amend the complaint to meet those requirements, within forty-five days from the date of this decision.