Peter C. and Sharon M. LABOVITZ,
Plaintiffs,

v.

The WASHINGTON TIMES CORPORA-
TION and News World Communica-
tions, Inc., Defendants.

Civ. A. No. 95–138 SSH.

United States District Court,
District of Columbia.

Aug. 28, 1995.

Michael Nussbaum, Alan B. Croft, Stacy A. Feuer, Nussbaum & Wald, Washington, DC, for Plaintiffs.

Stanley Samorajczyk, Akin, Gump, Strauss, Hauer & Feld, Washington, DC, for Defendants.

*OPINION*

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to dismiss. The Court grants defendants' motion in major part, in accordance with this Opinion. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nonetheless sets forth its reasoning.

*Background*

Because this matter is before the Court on a motion to dismiss, the Court takes plaintiffs' factual allegations to be true. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995). As alleged in the complaint, plaintiffs Peter and Sharon Labovitz were officers, directors, and shareholders of DCI Publishing, Inc. (DCI), and its affiliated entities, the DCI companies.[1] DCI published community newspapers distributed in the Maryland and Virginia suburbs of the District of Columbia. In deciding defendants' motion to dismiss, the Court must determine whether plaintiffs have standing to sue for alleged injuries suffered individually, a question which cannot be resolved without determining whether plaintiffs' alleged injuries are derivative from injuries to their corporation.[2]

In January 1991, defendants The Washington Times and its parent company, News World Communications, Inc. (hereinafter WT), expressed interest in acquiring DCI. At that time, the DCI newspapers' circulation neared 500,000. Still, the corporation had been operating at a loss since 1987.[3] Instead of the contemplated acquisition, the parties agreed to a complex arrangement whereby WT agreed to loan DCI cash and collateral, and to provide certain services, in exchange for veto power over certain operational decisions and an option to acquire either DCI's stock or its assets after two-and-

1. John W. Hanes, Jr., shared equally in control of the corporation. Plaintiffs' complaint does not make clear whether they and Hanes were DCI's only shareholders.

2. In this context, standing refers to whether suit is brought in the name of the "real party in interest." Although defendants' use of a Rule 12(b)(6) motion is acceptable, *see Whelan v. Abell*, 953 F.2d 663, 672 (D.C.Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 300, 121 L.Ed.2d 223 (1992), defendants should have made explicit reference to Fed.R.Civ.P. 17(a).

3. DCI lost approximately $1.4 million dollars in 1987, $0.875 million in 1988, $2.5 million in 1989, and $2.9 million in 1990. (Complaint, Attachment A.)

a-half years.[4] The parties executed written representations of their agreement on August 5, 1991, consisting of four "Loan Documents" titled "Loan Agreement," "Printing Agreement," "[Purchase] Agreement," and "Non-Negotiable Promissory Note." (Complaint ¶ 21.) Plaintiffs signed the Loan Agreement and the Purchase Agreement in their individual capacities, as guarantors of the loan, and as DCI stockholders, respectively.[5]

Again, accepting plaintiffs' allegations as true, operations under the new agreement did not go smoothly. WT and plaintiff Peter Labovitz soon disagreed as to how DCI should be run. For example, WT denied Peter Labovitz's cost-cutting recommendations and did not allow DCI to cut its circulation base. In October 1991, Peter Labovitz agreed to relinquish control of DCI's daily operations in exchange for a promise that he would be paid $20,000 per month for six months. This agreement contemplated that he would remain active in other areas of DCI's management, but only a short time after he relinquished control of DCI's daily operations, WT denied Labovitz access to DCI's financial information, stopped sales of equipment he had negotiated, transferred some of DCI's assets and personnel to themselves, and instructed DCI's employees not to communicate with Labovitz. WT later refused to pay him the agreed compensation.

Plaintiffs allege that, throughout their relationship, WT attempted to operate DCI in a manner consistent with their own long-term interests and without consideration of DCI's short-term survival, despite assuring plaintiffs that they were committed to DCI's financial success. When WT stopped providing cash and services to DCI in December 1992, after DCI failed to pay the previously deferred charges for services rendered, DCI was financially devastated. DCI filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia on January 20, 1993.

Plaintiffs filed suit in this court on January 19, 1995, based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. They seek relief on several counts, alleging that the value of their interests in DCI was substantially reduced, that their personal guarantees of DCI's debts were triggered, and that WT had breached their agreement to pay Peter Labovitz for relinquishing control of DCI's daily operations. Plaintiffs contend they were economically injured in an amount not less than $15,000,000 in each count of their complaint.

*Discussion*

As has been noted, the Court construes plaintiffs' complaint liberally, and gives plaintiffs the benefit of all inferences that can be derived from the facts alleged because it is considering a motion to dismiss. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). However, the Court need not accept legal conclusions cast in the form of factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

The Court first finds that plaintiff Peter Labovitz has stated a claim for breach of contract in Count VII of the complaint, and denies defendants' motion to dismiss as to this claim.[6] The complaint sufficiently alleges and supports the existence of an oral contract between WT and Peter Labovitz,

4. Allegedly, WT found the loan arrangement more attractive than an outright acquisition because they feared that public perception of an acquisition would be excessively negative once their ties to the Unification Church and its leader, Reverend Sun Myung Moon, were disclosed. Plaintiffs hoped that in the two-and-a-half year waiting period, DCI would regain value and profitability lost in the 1991 newspaper industry recession, and that WT would have to pay more to acquire DCI in the future.

5. As shareholders, plaintiffs were necessarily parties to the Purchase Agreement because that agreement gave WT the option to acquire either DCI's stock or assets.

6. Sharon Labovitz has no legal stake in this breach of contract claim, and therefore, should not be considered a co-plaintiff as to this claim. Although plaintiffs' complaint states that "[t]o the extent that co-plaintiff Sharon M. Labovitz was not personally involved with the matters referred to below, Peter C. Labovitz acted as her agent with respect to the Labovitz interests," (Complaint ¶ 2), this is only a legal conclusion cast in the form of a factual allegation which the Court need not accept.

and WT's breach of that contract. Although the compensatory damage amount sought on this count seems excessive, the amount in controversy satisfies diversity jurisdiction requirements. Peter Labovitz will bear the burden of proving his damages at trial.

As stated above, the remainder of plaintiffs' complaint seeks damages for the depreciation of value of their interests in the DCI corporation, and for the loss caused by the triggering of their personal guarantees of DCI's debts. Defendants assert that plaintiffs have no standing to seek relief for these injuries on the ground that the injuries are consequences of the corporation's losses.

Whether suit may be brought by individuals or should be brought by the corporation depends on "considerations and conventions of corporate law," *Whelan v. Abell,* 953 F.2d at 672, and it is state law that determines "whether a shareholder may maintain a direct, nonderivative action." 12B William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911 at 484 (perm. ed. rev. vol. 1993). Although state law is of critical importance, both parties have ignored the question of which state's law is applicable to this case. Instead, they have cited cases brought under the Racketeer Influenced and Corrupt Organizations Act, cases applying Illinois law, Louisiana law, and Missouri law, and even cases that do not make clear which state's law is being applied. A federal court sitting in diversity ordinarily must apply the choice of law rules of the jurisdiction in which it sits. *GEICO v. Fetisoff,* 958 F.2d 1137, 1141 (D.C.Cir.1992). Although federal courts in the District of Columbia "are not obligated to follow the doctrine announced in *Erie Railroad Co. v. Tompkins,* [304 U.S. 64] 58 S.Ct. 817 [82 L.Ed. 1188] (1938)," they have applied the District of Columbia's choice of law principles "to promote uniformity and [to] assure proper deference to District of Columbia laws." *Gray v. American Express Co.,* 743 F.2d 10 (D.C.Cir.1984).

The District of Columbia follows a modified "interest analysis" approach to choice of law. Under this approach, courts must first determine whether a true conflict exists, and if so, must determine which jurisdiction has the "more substantial interest" in having its law applied to the case. *GEICO,* 958 F.2d at 1141 (citing *Eli Lilly & Co. v. Home Ins. Co.,* 764 F.2d 876, 882 (D.C.Cir. 1985) and *Fowler v. A & A Co.,* 262 A.2d 344, 348 (D.C.1970)). As the Seventh Circuit has pointed out, "[t]he choice between derivative and direct litigation is a choice about how (and by whom) the internal affairs of the firm are managed." *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 382 (7th Cir.1990), *cert. denied,* 500 U.S. 952, 111 S.Ct. 2257, 114 L.Ed.2d 710 (1991). When a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated, *see* Restatement (Second) of Conflicts of Law §§ 301–310 (1971), and the District of Columbia follows suit. *See Cowin v. Bresler,* 741 F.2d 410, 414 (D.C.Cir.1984). The state of incorporation has a strong interest in having its law applied to matters of corporate governance and other internal affairs for the obvious reason that the corporation exists under its laws. District of Columbia law directs the Court to look to Delaware's law to resolve the standing question because DCI is incorporated in that state.[7]

Although Delaware courts have not addressed the precise issue before the Court, they adhere to the general rule that a shareholder may not sue as an individual if the alleged wrong is primarily against the corporation. *Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348 (Del.1988); *Lipton v. News Int'l, Plc,* 514 A.2d 1075 (Del.1986); *Moran v. Household Int'l, Inc.,* 490 A.2d 1059 (Del.Ch.), *aff'd,* 500 A.2d 1346 (Del. 1985); *Bokat v. Getty Oil Co.,* 262 A.2d 246 (Del.1970); *Elster v. American Airlines,*

7. If plaintiffs had standing to sue under Delaware law, the Court then would have to decide which state's law would apply to plaintiffs' common-law tort and contract claims against WT. Under District of Columbia choice of law principles, there are three potentially "interested" jurisdictions: Delaware, Virginia, and the District of Columbia. The Court does not resolve this issue because it finds plaintiffs do not have standing to pursue their claims individually under Delaware law.

*Inc.*, 100 A.2d 219 (Del.Ch.1953); *see also* Fletcher, *supra* § 5911 n. 7 (citing cases from 19 other states supporting this general rule). The one exception to this general rule is that a stockholder may maintain an individual action against the corporation if that stockholder has sustained a "special injury," as when "there is a wrong suffered by [an individual stockholder] that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote." *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 330 (Del.1993). Delaware courts have recognized a "special injury" where there has been stock dilution and a corresponding reduction in stockholder's voting power, *id.* at 332–333, and where a stock exchange agreement has violated shareholder voting rights because management gained veto power over all shareholder actions, *Lipton,* 514 A.2d at 1079, but not where corporate mismanagement has depressed stock value, *Bokat,* 262 A.2d at 249, where the manipulation of corporate machinery has not directly prohibited a proxy contest, *Moran,* 490 A.2d at 1070, or where directors have approved "golden parachutes," and paid other unnecessary fees and expenses, *Kramer,* 546 A.2d at 353.

To date, Delaware courts have applied the "special injury" exception only to cases where an individual stockholder sued his corporation; they have never applied that exception to a case where a stockholder has attempted to sue a third party. In fact, Delaware case law strongly suggests that when the corporation is injured by a third party, the corporation's directors are left to exercise their business judgment in deciding whether bringing suit is in the best interests of the corporation, *Good v. Getty Oil Co.*, 514 A.2d 1104, 1106 (Del.Ch.1986), and that the individual stockholders must rely on their directors to manage the firm. Only in "exceptional situations," where a corporate concern "may not be resolved through the processes of business judgment" is a shareholder derivative suit on behalf of the corporation permitted. *Id.* at 1106. A derivative action is disfavored because "[it] is an encroachment upon the prerogative of the board of directors to manage the corporation." *Id.* at 1106 (citing *Aronson v. Lewis,* 473 A.2d 805 (Del.1984)). Accordingly, the Court concludes that an individual, non-derivative action likely would be viewed equally disfavorably by Delaware courts.

Even assuming that Delaware courts would apply the "special injury" exception to suits brought by individuals against third parties, there is no basis for concluding that plaintiffs' alleged injuries fall within the "special injury" exception as defined by Delaware courts. Under Delaware law, the Court must look to the nature of the wrongs alleged in the body of the complaint to determine whether the complaint states an individual cause of action, and not to plaintiffs' designation or stated intention. *Lipton,* 514 A.2d at 1078. If the gravamen of the complaint is injury to the corporation or if the shareholder's damages are the indirect result of an injury to the corporation, the shareholder may not sue individually. *Kramer,* 546 A.2d at 352; *Lipton,* 514 A.2d at 1078; Fletcher, *supra* § 5911 at 484 n. 14 (citing *Seidel v. Allegis Corp.*, 702 F.Supp. 1409 (N.D.Ill.1989) (applying Delaware law)).

Plaintiffs' alleged injuries are derived from injuries to the DCI firm.[8] The derivative nature of the alleged injury to the value of plaintiffs' interests in DCI seems obvious in light of the Delaware courts' consideration of cases where corporate mismanagement depressed stock value. The courts have ruled that such claims must be pursued derivatively. *Kramer,* 546 A.2d at 353; *Bokat,* 262 A.2d at 249; *Elster,* 100 A.2d at 222. The policy behind their decision is that depressed stock value affects all shareholders equally, as each share of stock is worth less than it was before, and therefore, any devaluation of

8. Plaintiffs also claim that they were injured by WT's attempts to force them to sell their interests at a distressed price. However, plaintiffs never sold their stock. They also claim they were injured when WT allegedly forced Peter Labovitz to relinquish daily control of DCI, but also allege that he voluntarily agreed to give up control in exchange for a payment of $120,000. The Court is not required to accept plaintiffs' legal conclusions cast as factual allegations, *Kowal,* 16 F.3d at 1276, and finds that except as noted with regard to the breach of promise to pay $120,000, these allegations do not establish any injury.

stock is shared collectively by all shareholders, not suffered independently by an individual shareholder. If the corporation is made whole, each shareholder's individual loss will be remedied. Following the reasoning of the Delaware courts, the Court concludes that plaintiffs' alleged injury to the value of their holdings is derivative, and that they lack standing to pursue their claims individually.

The derivative nature of plaintiffs' alleged injury as guarantors of certain corporate obligations is less obvious, but equally true. Plaintiffs ask this Court to find that they were uniquely situated as shareholders/guarantors, and that losses stemming from their personal guarantees qualify as special injury. In support of their position, plaintiffs rely primarily on *Buschmann v. Professional Men's Ass'n,* 405 F.2d 659 (7th Cir.1969), where the court found that a shareholder/guarantor had a personal cause of action when his liability to pay the corporation's indebtedness was triggered because the obligation did not arise from his status as a stockholder.[9] They support their position by asserting that WT owed them a "special duty" because they signed the Loan Agreement and the Purchase Agreement in their individual capacities, and therefore, had a direct contractual relationship with WT.

This Court may not properly follow the path which plaintiffs urge, and grants defendants' motion to dismiss as to Counts I, II, III, IV, and VIII. While some states recognize a "special duty" exception in its own right, Delaware law does not, preferring instead to look to whether a plaintiff has alleged special injury, in whatever form. *Lipton,* 514 A.2d at 1078. Although they may have dealt directly with WT in their individual capacities, "direct *dealing* is not direct *injury.*" *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago,* 877 F.2d 1333, 1336 (7th Cir.1989) (emphasis in original). None of the authority cited by plaintiffs has been cited with approval by the Delaware courts. Delaware is known for its highly developed body of corporate law, and if that body of law is to evolve, it is best for this Court to leave it to the Delaware courts to develop it.

While plaintiffs are correct that some courts have allowed such an individual action under similar circumstances, others have "rejected the assertion that a stockholder's status as a guarantor of a corporate debt gives him standing to assert an individual claim against some third party." *Nicholson v. Ash,* 800 P.2d 1352, 1357 (Colo.Ct.App.1990); *accord Weissman v. Weener,* 12 F.3d 84 (7th Cir.1993); *Taggart & Taggart Seed, Inc. v. First Tennessee Bank Nat'l Ass'n,* 684 F.Supp. 230 (E.D.Ark.1988), *aff'd,* 881 F.2d 1080 (8th Cir.1989); *DLB Collection Trust v. Harris,* 893 P.2d 593 (Utah Ct.App.1995); *Pepe v. General Motors Acceptance Corp.,* 254 N.J.Super. 662, 604 A.2d 194 (Ct.App. Div.), *cert. denied,* 130 N.J. 11, 611 A.2d 650 (1992). The reasoning behind this more recent line of cases is persuasive. There are many reasons why stockholders who are also guarantors should not be allowed to assert a personal right of action against a third-party whose actions have damaged the corporation. Requiring the suit to be brought in the name of the corporation prevents multiplicity of suits by various stockholders and creditors. It also recognizes that the guarantors' injuries are derivative in the sense that they arise only when the corporation cannot meet its obligations. When guarantors "suffer direct injury—independent of the firm's fate—they may pursue their own remedies," but otherwise they must take their place in line as creditors, "dependent now as before on the success of the firm in which they invested." *Mid-State Fertilizer,* 877 F.2d at 1336–37. Allowing recovery for derivative injuries would be a form of double counting; because the corporation is allowed to litigate in its own name and collect the whole sum, "[courts] must exclude attempts by the participants in the venture to recover for their individual injuries." *Id.* at 1336. Otherwise, courts would have to "attempt to apportion the recovery according to who bears the effects" in order to avoid double counting, which would be "a heroic task" and "a nightmare." *Id.* Furthermore, allowing plaintiffs' individual claims to go forward would, in effect, give them preference as shareholder creditors over DCI's other non-shareholder

9. Plaintiffs also rely on a series of case following *Buschmann.*

creditors. The Court is especially alert to this danger in light of the fact that DCI is in the midst of a bankruptcy proceeding in the Eastern District of Virginia, and that DCI is suing WT for damages to the corporation. *Cf. Littlefield v. Union State Bank,* 500 N.W.2d 881 (N.D.1993) ("Although the plaintiffs may have made some personal guarantees, the crux of their complaint was that the corporation was the target of the defendants' wrongful conduct," thus, plaintiffs' claim belonged to the corporation and they were bound by confirmation of corporation's reorganization plan in bankruptcy proceeding); *Pepe,* 604 A.2d at 197 ("Dismissal of [plaintiffs'] claims does not result in a wrong without a remedy. The remedy for misconduct of GMAC or any other party ... is in the hands of the bankruptcy trustee and the Bankruptcy Court.").

Plaintiffs also lack standing to bring their statutory conspiracy claim under the Virginia Conspiracy Act, Virginia Code §§ 18.2–499 to –500. Counts V and VI of plaintiffs' complaint allege that WT conspired with Michael A. Webb, and plaintiffs' co-investor, Hanes, with the intent willfully and maliciously to injure plaintiffs' business and property interests or, alternatively, that WT attempted to induce Webb and Hanes to enter an association aimed at injuring their business. However, plaintiffs' claim the same two injuries as before: loss to stock value and losses from the triggering of their personal guarantees. These alleged injuries are not distinct from their personal interests as investors in DCI, but again, are derivative from the corporation's injuries.[10] *See Buschi v. Kirven,* 775 F.2d 1240, 1259 (4th Cir.1985) (interpreting the Virginia Conspiracy Act); *Picture Lake Campground, Inc. v. Holiday Inns, Inc.,* 497 F.Supp. 858, 863 (E.D.Va. 1980) (same). Accordingly, defendants' motion to dismiss also should be granted as to Counts V and VI of the complaint.

The Court's decision should not be construed as approval of WT's alleged conduct during this course of dealing; no position is taken with respect thereto. It only recognizes that any claims for affirmative recovery for injuries to the value of the corporation must be brought by the corporation. It also recognizes that if the corporation has a claim against WT, and is successful in its bankruptcy proceeding, then plaintiffs presumably will be made whole.

*Conclusion*

For the reasons stated above, the Court denies defendants' motion to dismiss as to the breach of contract claim, which is Count VII of plaintiffs' complaint. The Court grants defendants' motion to dismiss as to Counts I, II, III, IV, V, VI, and VIII. An appropriate Order accompanies this Opinion.

*ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that as to Count VII of plaintiffs' complaint, defendants' motion to dismiss is denied. It hereby further is

ORDERED, that as to Counts I, II, III, IV, V, VI, and VIII, defendants' motion to dismiss is granted. It hereby further is

ORDERED, that defendants' answer(s) shall be filed no later than September 15, 1995. It hereby further is

10. This finding is consistent with the Virginia Supreme Court's holding in *Luckett v. Jennings,* 435 S.E.2d 400 (Va.1993), in which plaintiff's claim was permitted to proceed to trial. In *Luckett,* although plaintiff did not specifically allege the nature of the injury to his business, "[he] impliedly [alleged] that there was an injury," and stated in his complaint that "[he had] been damaged in his business by the [losses to the corporation]." *Id.* at 402 n. 2. The Virginia Supreme Court concluded that because plaintiff did not specify in which business he was injured, the questions of whether plaintiff had a business separate and distinct from the corporation, and whether plaintiff sustained an injury to that business distinguishable from the injury to the corporation, were issues of fact to be resolved at trial. *Id.* at 402. Here, Counts V and VI clearly reveal that plaintiffs are alleging injury to their interests in the DCI corporation only. *See* Complaint ¶¶ 71, 75 ("As a direct and proximate result of these actions, plaintiffs Peter and Sharon Labovitz suffered direct damage to their business and property interests in DCI giving rise to a cause of action pursuant to Va.Code § 18.2–500.")

ORDERED, that the parties shall file a supplemental Local Rule 206 Report no later than October 6, 1995.

SO ORDERED.