**ASSOCIATION OF MERGER DEALERS, LLC,**
Plaintiff,

v.

**TOSCO CORPORATION,**
et al., Defendants.

**No. CIV. 01–0978(TFH).**

United States District Court,
District of Columbia.

Sept. 26, 2001.

Harry C. Storm, Abrams, West, Storm & Diamond, P.C., Bethesda, MD, for Plaintiff.

Charles Frederick Lettow, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Defendants.

### MEMORANDUM OPINION

HOGAN, Chief Judge.

Pending before the Court is the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). This case involves a dispute as to whether the parties had a contract, and it is before the Court via diversity jurisdiction. Plaintiff Association of Merger Dealers, LLC ("AMD") is a non-profit firm that was formed to represent the interests of individual Exxon- and Mobil-branded gas station lessees ("dealers") after Exxon Corporation ("Exxon") and Mobil Oil Corporation ("Mobil") announced their intent to merge. In this lawsuit, AMD seeks to enforce a purported promise made by Defendants Tosco Corporation, Tosco Marketing Company, and Tosco Refining (collectively "Tosco")[1] to AMD to sell the

---

1. Although AMD also originally named Tosco Operating Company in its Complaint, AMD subsequently filed a notice on July 23, 2001,

stations to the dealers for their current-use values as gas stations. This promise was allegedly made by Tosco in its successful effort to acquire the stations, which were divested as part of the FTC's consent agreement with Exxon and Mobil. Tosco challenges AMD's standing and capacity to bring this lawsuit as well as the validity of AMD's promissory estoppel and breach-of-contract claims. Upon careful consideration of the motion, the opposition and reply thereto, the hearing held on August 21, 2001, and the entire record herein, the Court will grant the motion and dismiss this case.

## I. BACKGROUND [2]

On December 1, 1998, Exxon and Mobil announced their intention to merge into a single company to be named "ExxonMobil." Compl. ¶ 9. Following that announcement, various Mobil and Exxon retail service station dealers formed Plaintiff AMD, a not-for-profit Maryland limited liability company ("LLC"), to promote their common business interests with respect to the merger. *Id.* ¶ 3.[3]

After the announced merger, the Federal Trade Commission ("FTC") expressed antitrust concerns and considered litigating to prevent its execution. *Id.* ¶ 11. By Fall 1999, the FTC determined that divestiture of retail sites on the east coast would be required to address their concerns and settle the matter. It then solic-ited input from AMD and other dealer groups regarding potential purchasers of the divested assets and recommended that the dealers speak with potential bidders. AMD conferred with Sunoco, Inc., Amerada Hess Corporation, Crown Central Petroleum Corporation, Getty Petroleum, Irving Oil Corporation, Dag Petroleum Companies, and Defendant Tosco concerning demands of the dealers that would need to be met in order for the dealers to forego legal action on issues arising out of the intended merger and the sale of divested assets. *Id.* ¶ 14.

In early November 1999, AMD representatives and others began communications with Tosco and the FTC, seeking assurances that if Tosco purchased the divested assets, Tosco in turn would offer the dealers the properties at a price based on continued service station use valuations. Tosco agreed to provide the dealers with that right. *Id.* ¶ 15. On November 30, 1999, the FTC announced that a consent agreement had been reached with Exxon and Mobil to settle the antitrust issues raised by the merger, and a sixty-day study and comment period was to follow. As part of the agreement, approximately 1,740 retail service stations were to be divested. *Id.* ¶ 16.[4] On December 2, 1999, Tosco announced its agreement with ExxonMobil to acquire the divested stations, with the closing scheduled for March 1, 2000.

dismissing without prejudice its claims against it.

2. Because this matter is before the Court on a motion to dismiss, it construes the Complaint liberally, taking all the facts alleged as true, and giving the plaintiff the benefit of all reasonable inferences from those facts. *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C.Cir.1994); *Kowal v. MCI Communica-* *tions Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994).

3. Membership in AMD consists of branded Mobil retail service station dealers in Maryland, Virginia, Delaware, the District of Columbia, and Pennsylvania. Compl. ¶ 3.

4. Relevant to this case, the FTC ordered that Mobil stations in New Jersey, Pennsylvania, Delaware, Maryland, Virginia, and D.C. be divested. *Id.* ¶ 17.

Following the announcements of the FTC's consent agreement and Tosco's deal to acquire the divested stations, AMD continued to seek assurances that its dealers would receive the right to purchase their properties from Tosco under a current-use valuation, and the dealers made Tosco aware that they would take all necessary legal, political, and public relations measures necessary to insure they obtained their purchase rights. *Id.* ¶¶ 18–19. From early November 1999 to February 28, 2000, Tosco repeatedly communicated to AMD and to the FTC, orally and in writing, its agreement to provide the dealers with the right to purchase the divested stations at prices based on current-use values.[5] It further represented that it would make all the offers between March 15, 2000 to June 1, 2000. *Id.* ¶ 20.[6]

On March 1, 2000, Tosco acquired the divested stations from ExxonMobil for $860 million and became the franchisor, landlord, and/or supplier to the Exxon and Mobil dealers at those stations. *Id.* ¶ 23.[7] In May 2000, Tosco made offers to various dealers, offering to sell the station assets to those dealers in conjunction with a continued long-term supply agreement of fifteen years. However, Tosco offered the properties at inflated prices based upon valuations other than the agreed-upon current-use valuations. In some cases, the offer was more than $1 million higher than the current-use market value of the particular station. *Id.* ¶ 24.[8]

AMD then filed this lawsuit, asserting two counts against Tosco. Count One avers a claim of promissory estoppel: in detrimental reliance on Tosco's unfulfilled promise to offer to sell the divested stations to their respective dealers for their current-use value, AMD and its members forewent litigation to stop the transfer of the stations to Tosco and provided support to Tosco in its effort to purchase the di-

---

**5.** On February 2, 2000, DAG Enterprises, Inc., a petroleum distributor, alleged that it had been foreclosed from bidding on the divested stations and sued ExxonMobil in this Court, *DAG Enterprises v. ExxonMobil Corporation*, No. 00–0182(CKK). Tosco sought to intervene in the lawsuit and filed a declaration from Antoine E. Haddad, an AMD member who is a Mobil dealer in Montgomery County, Maryland, which stated in pertinent part:

Tosco has successfully addressed and resolved many of the concerns expressed by Mobil dealers in my area. For example, lessee-dealers in my area were concerned about being able to purchase their own stations from Tosco. Tosco agreed not only to sell stations to interested dealers, but also to price the stations according to their current-use value as gas stations. Tosco also agreed to help dealers find financing for their purchase of the service station properties and agreed to give dealers a competitive allowance to held compensate for maintenance and money costs.... Although the transition to Tosco ownership has not yet occurred, and Tosco has not had an opportunity to make good on its prom-

ises, I and many other dealers in my region feel confident that Tosco will live up to the task and that our relationship with Tosco will be a positive and productive one.

*Id.* ¶ 22.

**6.** AMD also believes that Tosco made commitments to the FTC that it would offer the divested stations to the dealers at their current-use value. *Id.* ¶ 22.

**7.** Pursuant to a trademark license agreement between ExxonMobil and Tosco the divested stations remained "Exxon" or "Mobil" respectively. *Id.* ¶ 23.

**8.** The offers also contained a "facility allowance" to Mobil dealers, which ranged from 1.5 cents per gallon for years one through five, to 1.75 cents per gallon for years six through ten, to 2.0 cents per gallon for years eleven to fifteen. The facility allowance was neither competitive with the market nor sufficient to help compensate for maintenance and money costs as Tosco had promised. This allowance was substantially below the 4–cent allowance Tosco offered to other divested station dealers. *Id.* ¶ 25.

vested stations. *Id.* ¶¶ 26–31.[9] Count Two alleges breach of contract: Tosco has failed to perform its promise to offer to sell the stations for their current-use value, which was made in exchange for valuable consideration in the form of both foregone litigation and affirmative support in Tosco's effort to acquire the stations. *Id.* ¶¶ 32–36. AMD seeks specific performance and price reformation of prior defective offers. *Id.* at 11.

Tosco has moved to dismiss the complaint, claiming that this Court lacks subject matter jurisdiction over the case and alternatively that the complaint fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(1), (6).

## II. DISCUSSION

### A. Legal Standard

■ In considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all material factual allegations in the complaint. *Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir. 1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). In addition, a court may consider such materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. *See Herbert v. Nat'l Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987); *Borg–Warner Protective Servs. Corp. v. EEOC,* 81 F.Supp.2d 20, 23 (D.D.C.2000).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."). In reviewing such a motion, the Court must construe the complaint in the light most favorable to plaintiff and must accept as true all allegations and all reasonable factual inferences drawn from well-pleaded factual allegations. *See Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 411, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986); *In re United Mine Workers Employee Benefit Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994).

### B. Analysis

Tosco argues that this case should be dismissed because AMD has neither standing nor capacity to sue. That is, the alleged injuries affect AMD's members, not AMD itself, so AMD has no individual standing to sue on its own behalf. And as an LLC formed under Maryland law, AMD is separate from its members and is therefore not an association with capacity to sue on its members' behalf. Even if it were an association, continues Tosco, associational standing to sue as a representative is not recognized by the applicable state law, and therefore, AMD is without standing to prosecute its claims. Finally, Tosco contends that even if AMD had standing and capacity to bring this lawsuit, it nonetheless has failed to state a valid claim under relevant state law for promissory estoppel or breach of contract.[10]

---

9. Such support included favorable comments to the FTC and a sworn declaration in a court proceeding. *Id.* ¶ 29; *see also supra* note 5.

10. Tosco also initially argued that this case lacked complete diversity because one of the defendants, Tosco Operating Company, had the same, Delaware citizenship as some mem-

■ The Supreme Court has articulated three elements that must be met to satisfy the "irreducible constitutional minimum of standing" in a federal case:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " ... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court." ... Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and footnotes omitted). The party invoking federal jurisdiction bears the burden of establishing these elements. *See id.* at 561, 112 S.Ct. 2130. Tosco argues that AMD has not made the requisite showing of injury, causation, or redressability to establish constitutional standing to sue on its own behalf. AMD counters simply by stating that it has alleged in its Complaint that promises were made to it as well as the affected dealers and that Tosco's actions damaged both it and its members. Thus, AMD argues, it is a proper party in its own right to bring this lawsuit. Pl.'s Opp'n at 2–3 (citing Compl. ¶¶ 27, 33, 36).

■ The Court finds that AMD has not satisfied the requisite elements of individual standing in this case. Respecting the injury element, the plaintiff asserts that it suffered damages, but all factual allega-

tions made in its complaint concern only its members, not the organization itself. An example of AMD's conflation of itself with its members can be found in the complaint's allegation that the "[p]laintiff and its members have been deprived of the unique opportunity to purchase their station properties." Compl. ¶ 36. But the complaint nowhere alleges that AMD itself owns, operates, or is in a position to purchase a station property. Nor can that fact be implied, as AMD was formed to represent the dealers' collective interests with respect to the proposed merger, not to become a dealer itself. In addition, AMD's prayer for relief provides itself with no redress; rather, the relief sought by AMD is strictly for its members. The specific performance sought by the plaintiff, for example, would require Tosco to make a new offer with specific terms concerning the price, supply arrangement with a competitive allowance, and the length of time the offer must be held open "to the dealers." Compl. at 11. It would also mandate reformation of the price previously offered to some dealers by Tosco. In other words, it seeks nothing for AMD itself. The Court therefore cannot find standing for AMD to bing this lawsuit on its own behalf.

Beyond individual standing to sue for one's own rights, however, the Supreme Court has also recognized associational standing through which an organization may bring claims as a representative on behalf of its members. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In *Warth*, for example, the Court stated:

bers of AMD. Since Tosco's filing of its motion to dismiss, however, AMD filed a notice dismissing without prejudice Tosco Operating Company on July 23, 2001, thereby mooting this basis of challenge.

Even in the absence of injury to itself, an association may have standing solely as the representative of its members.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

422 U.S. at 511, 95 S.Ct. 2197.[11] Recognizing such prior statements, the Court in

*Hunt* formulated the following test for associational standing:

Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. at 343, 97 S.Ct. 2434.

Tosco argues that AMD may not avail itself of this associational standing doctrine, however, because D.C. choice of law rules would call for the application of Virginia substantive law, which does not recognize associational standing.[12] AMD re-

---

**11.** Respecting the type of relief an association may seek on behalf of its members, the *Warth* Court continued:

[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Id.* at 515, 95 S.Ct. 2197.

**12.** Tosco also contends that AMD lacks *capacity* to sue on behalf of its members. In its view, Maryland law should apply for determining capacity, and under Maryland law, LLCs may sue only on their own behalf; they may not sue in a representative capacity because unlike true associations they are legally separate entities from their members. AMD retorts that its ability to sue in a representative capacity cannot be seriously questioned, because Maryland specifically grants the power to sue or be sued in all courts.

Under Federal Rule of Civil Procedure 17(b), the capacity of an individual to sue is

determined by the law of the individual's domicile, and the capacity of a corporation is determined by the law under which it was organized. "In all other cases capacity to sue ... shall be determined by the law of the state in which the district court is held," with two exceptions inapplicable to this case. Fed. R. Civ. P 17(b). As an "unincorporated business organization" under Maryland law, Md.Code Ann., Corps. & Ass'ns § 4A–101(1) ("Limited liability company" or "domestic limited liability company" means a "permitted form of unincorporated business organization which is organized and existing under this title."), AMD is neither an individual nor a corporation. The latter provision of Rule 17(b) therefore applies, and because this lawsuit has been filed with this Court, D.C. law determines capacity to sue in this case.

D.C. law, in turn, recognizes foreign LLCs and applies the foreign jurisdiction's law to their formation, internal affairs, and the liability of their members and managers. D.C.Code § 29–1052; *see also Labovitz v. The Washington Times Corp.*, 900 F.Supp. 500, 503 (1995) ("When a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated ... and the District of Columbia follows suit.... The state of incorporation has a strong interest in hav-

joins that D.C. substantive law, under which associational standing is recognized, should apply in the appropriate conflicts analysis.

While the Court agrees with the parties that a conflict exists between the law on associational standing of the various jurisdictions that may have an interest in this case, it disagrees with both sides as to what jurisdiction's law should apply. In diversity cases, federal courts apply federal procedural law and state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). But when more than one state has an interest in the litigation and a conflict of law arises, the Court applies the choice of law rules of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Elec.* *Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). To determine the applicable state law, therefore, courts in the D.C. Circuit look "to the choice of law rules prevailing in the District of Columbia." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.C.Cir.2001). The District "employs the governmental interest analysis test of the Restatement Second of Conflict of Laws." *Id.* (citing *Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 200 (D.C.1997)); *see also Ideal Elect. Sec. Co., Inc. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 148 (D.C.Cir.1997) (applying section 188 of the Restatement (Second) of Conflict of Laws to contractual claims). Under this approach, the District of Columbia employs a modified "interest analysis," under which the Court must first determine whether a "true conflict" exists—"that is, whether more than one jurisdiction has a potential interest in having its law applied

---

ing its law applied to matters of corporate governance and other internal affairs for the obvious reason that the corporation exists under its laws.") (citations omitted). Questions concerning AMD's capacity therefore should be resolved under Maryland law as AMD was organized in Maryland. Neither party appears to seriously dispute the application of Maryland law respecting the capacity to sue in this case.

As correctly noted by AMD, Maryland law permits LLCs to "[s]ue, be sued, complain, and defend in all courts." Md.Code Ann., Corps. & Ass'ns § 4A–203(2). But the Court is not convinced that this necessarily resolves whether or not they may do so in a representative capacity. In fact, as proffered by Tosco, Maryland law appears to distinguish between an association as not legally separate from its members and an LLC as legally separate from its members. Maryland statutes reflect this view. *Compare* Md.Code Ann., Cts. & Jud. Proc. § 6–406 ("An unincorporated association" ... may sue or be sued in the group name on any cause of action affecting the common property, rights, and liabilities of the group[, and] ... [a]n action under this section ... [h]as the same force and effect with respect to the common property, rights, and liabilities of the group as if all members of the group were joined."), *with* Md.Code Ann., Corps. & Ass'ns § 4A–301 ("Except as otherwise provided by this title, no member shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company."), *and id.* § 4A–302 ("A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company ...."). But Tosco concedes that it was unable to locate any Maryland case law respecting the capacity of a Maryland LLC to sue. It accordingly cites cases addressing representational *standing* as the closest analog.

Although Tosco appears to have a colorable interpretation of Maryland law, the Court will withhold judgment on this precise issue. The Court's standing analysis below renders the resolution of this issue superfluous, and without a more definitive ruling from Maryland courts on this Maryland law issue, or at least more thorough briefing by the parties on this issue, it is more prudent for this Court to reserve judgment on the question.

and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff,* 958 F.2d 1137, 1141 (D.C.Cir. 1992). If there is a true conflict, the court must then determine which of the relevant jurisdictions has the "more substantial interest" in having its law applied to the case under review. *Id.* (citing *Eli Lilly & Co. v. Home Ins. Co.,* 764 F.2d 876, 882 (D.C.Cir.1985)); *see also, e.g., Labovitz v. The Washington Times Corp.,* 900 F.Supp. 500, 503 (1995).[13]

Several jurisdictions have a potential interest in this litigation. Tosco emphasizes Virginia's interest, for example, by pointing out that AMD has members in Virginia, Tosco conducts business in Virginia, and Virginia was the location of the first alleged statements of Tosco's intent.[14] AMD, by contrast, underscores the District's interest with the fact that AMD has District members, Tosco does business in the District, and Tosco memorialized the essence of its agreement in the District with the FTC and in a sworn declaration filed in previous litigation in this Court. Maryland, too, has an interest. AMD has members in Maryland, Tosco transacts business in Maryland as evidenced by the

fact that it owns stations in the state, and AMD is a Maryland entity.[15]

■ In addition, there is a conflict between the law of the several potentially interested jurisdictions respecting associational standing. Associations do not have standing to bring claims on behalf of their members, without specific legislation, in Virginia, *see, e.g., Pearsall v. Virginia Racing Comm'n,* 26 Va.App. 376, 494 S.E.2d 879, 883 (1998) ("The mere fact that its members have an interest in litigation does not, per se, vest the association with a justiciable interest in the litigation. Virginia recognizes representational standing only when it is specifically authorized by the legislature."), and in Maryland, *see, e.g., Citizens Planning and Housing Ass'n v. County Executive of Baltimore County,* 273 Md. 333, 345, 329 A.2d 681, 687–88 (1974) ("It has been generally recognized in this State that an association lacks standing to sue where it has no property interest of its own—separate and distinct from that of its individual members— which may be affected by any of the alleged acts under attack.").[16] By contrast, representational standing is recognized in

---

**13.** The court in *Labovitz* further noted:

Although federal courts in the District of Columbia "are not obligated to follow the doctrine announced in *Erie Railroad Co. v. Tompkins,* [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] (1938)," they have applied the District of Columbia's choice of law principles "to promote uniformity and [to] assure proper deference to District of Columbia laws." *Gray v. American Express Co.,* 743 F.2d 10 (D.C.Cir.1984).
900 F.Supp. at 503.

**14.** In support of the last point, Tosco has offered agendas and notes for meetings held at the McLean Hilton on December 6, 1999 at which approximately 128 dealers attended. Def.'s Reply at 12 & Ex. B.

**15.** Other jurisdictions, such as Pennsylvania, may have an interest as well. However, the parties have mentioned other states' interests

only in passing, and such interests appear to be confined to the fact that the states have AMD members. One exception is that Pennsylvania was also a site for meetings in which Tosco expressed an intent to make the offers to the dealers. Def.'s Mot. at 10; Def.'s Reply at 12 & Ex. B. But such meetings were also held in Virginia, and AMD does not use such meetings as a basis of its claims. These other states' interests, such as those of Pennsylvania, are therefore minimal and certainly not dispositive.

**16.** As more fully stated by the court in *Citizens Planning:*

The organizational appellants shall not fare as well as their individual counterparts. It has been generally recognized in this State that an association lacks standing to sue where it has no property interest of its own—separate and distinct from that of its

the District of Columbia. *See, e.g., Dupont Circle Citizens' Ass'n v. Barry*, 455 A.2d 417, 421 n. 18 (D.C.App.1983).[17] Thus, the Court must determine which jurisdiction has the more substantial interest in this litigation.

■ Contrary to the parties' beliefs, the jurisdiction with the more substantial interest is Maryland. As with both Virginia and the District, AMD has members in Maryland, and Tosco transacts business in Maryland. And importantly, AMD is an entity created under Maryland law. *See Labovitz v. The Washington Times Corp.*, 900 F.Supp. 500, 503 (1995) ("When a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated ... and the District of Columbia follows suit.... The state of incorporation has a strong interest in having its law applied to matters of corporate governance

and other internal affairs for the obvious reason that the corporation exists under its laws.") (citations omitted). Moreover, the declaration cited by AMD in support of applying the District's law came from a Maryland dealer. While the Court recognizes the interests in this litigation of both Virginia and the District, as set forth by the parties above, it concludes that Maryland's interest in this litigation outweighs such interests. Although Virginia may have a unique interest because it served as a site for meetings in which Tosco expressed an intent to make offers to the dealers, such meetings were also held in Pennsylvania, and AMD does not mention these meetings as a basis of its claims. The interest of Virginia is therefore less than that of Maryland.[18] Likewise, the District's interest is less compelling in this case because its unique interests—that is, the sworn declaration filed with this Court and communications with the Federal Trade Commission—are weak. The decla-

individual members—which may be affected by any of the alleged acts under attack.... The bill of complaint includes no allegations remotely suggesting that any of the organizational appellants possess such *separate* interests; hence, they lack the necessary standing to maintain this action.

273 Md. at 345, 329 A.2d at 687–88 (citations omitted); *see also, e.g., Medical Waste Assocs., Inc. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 614, 612 A.2d 241, 250 (1992) (upholding lower court's ruling that association lacked standing under Maryland's Administrative Procedure Act to challenge issuance of permits for construction and operation of infectious medical waste incinerator). As stated, the only exception to this common law rule has been for explicit statutory provision of standing, *see, e.g., Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n of Maryland*, 361 Md. 196, 211–215, 760 A.2d 1087, 1095–97 (2000), which the Maryland Limited Liability Company Act at issue here does not appear to provide.

**17.** In *Dupont Circle Citizens Association*, the D.C. Court of Appeals adopted the *Hunt* standard:

In order to bring an associational suit, the Association must show (1) that its members would otherwise have standing to sue in their own right, (2) that the interest it seeks to protect is germane to the association's purposes, and (3) that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

455 A.2d at 421 n. 18 (citing *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434).

Representational standing is also recognized in Pennsylvania. *Pennsylvania Sch. Bds. Ass'n, Inc. v. Commonwealth Ass'n of Sch. Adm'rs*, 696 A.2d 859, 868–69 (1997) ("It is well settled that an association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself.").

**18.** In any event, whether the Court applies Virginia law, as proposed by Tosco, or Maryland law is of no legal consequence on the ultimate question of standing as neither jurisdiction recognizes associational standing without specific statutory provision. *See, e.g., Pearsall*, 494 S.E.2d at 883; *Citizens Planning*, 329 A.2d at 687–88.

ration came from a Maryland dealer, and a general reliance on communications to a federal agency in the District to create a sufficient interest in applying D.C. law would lead to the peculiar and unacceptable result that federal courts throughout the country would apply D.C. law in diversity cases that may have nothing to do with business in the District. Because Maryland law should apply and does not recognize associational standing in cases such the one at hand without statutory provision, *Citizens Planning*, 329 A.2d at 687–88; *Mid–Atlantic Power Supply Ass'n v. Public Serv. Comm'n of Maryland*, 361 Md. 196, 211–15, 760 A.2d 1087, 1095–97 (2000), AMD is without standing to prosecute its claims. Accordingly, this case must be dismissed.[19]

## III. CONCLUSION

For the foregoing reasons, the Court will grant the defendants' motion to dismiss. The Court specifically concludes that the plaintiff has no standing to assert its claims in this case and will therefore dismiss this case pursuant to Rule 12(b)(1). An appropriate order will accompany this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the defendants' motion to dismiss [# 4] is **GRANTED.** Accordingly, it is further

**ORDERED** that this case is **DISMISSED.**

**SO ORDERED.**

---

**19.** Because the Court concludes that AMD does not have standing, it need not reach Tosco's alternative challenge to the sufficiency of AMD's promissory estoppel and breach of contract claims under Rule 12(b)(6).