**2025 UT App 18**

# THE UTAH COURT OF APPEALS

SMART TECH DEVELOPMENT LLC,
Appellant,
*v.*
PINK WATER HARVESTING LLC AND MATTHEW ANDERSON,
Appellees.

Opinion
No. 20230622-CA
Filed February 13, 2025

First District Court, Brigham City Department
The Honorable Brandon J. Maynard
No. 220100081

Sean N. Egan, Attorney for Appellant

Jared Berg, Attorney for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

MORTENSEN, Judge:

¶1      This dispute arose after Pink Water Harvesting LLC (Pink Water) sold a portion of its membership interest in Smart Tech Development LLC (Smart Tech), a Wyoming limited liability company. Pink Water received an offer from a third party to purchase all its interest in Smart Tech. Per Smart Tech's operating agreement, Pink Water offered the other two members of Smart Tech the opportunity to exercise their contractual rights of first refusal. Both members exercised their rights and offered to purchase the interest. Pink Water moved forward with the sale of two-thirds of its interest to one of the members, Afsanteen LLC (Afsanteen). Smart Tech and the other member, Joseph Monson, filed a complaint against Pink Water and Matthew Anderson,

Pink Water's manager, [1] arguing that the sale violated the operating agreement for a number of reasons. Monson and Pink Water eventually reached a settlement agreement and filed a stipulated motion to dismiss the action with prejudice. Smart Tech was not a party to the stipulation or the motion to dismiss. Despite Smart Tech notifying the district court that it was not a party to the settlement or stipulation and that it planned to file an opposition, the court granted the motion the day after the stipulation and motion were filed and dismissed the case in its entirety. Smart Tech filed a motion to alter, amend, or vacate the judgment under rules 59(e) and 60(b) of the Utah Rules of Civil Procedure. The district court denied the motion, and Smart Tech appealed. We reverse and remand the matter.

BACKGROUND

¶2    Smart Tech is a Wyoming limited liability company that is in the business of "refining magnesium chloride from the Great Salt Lake with trace minerals" found in "brine water." The original members of Smart Tech were Monson (holding 25% interest), Pink Water (holding 25% interest), and Afsanteen (holding 50% interest). The members elected two managers, David Salo (also a manager of Afsanteen) and Monson.

¶3    The members of Smart Tech are bound by an operating agreement, which includes a choice of law provision setting forth Wyoming law as the operating agreement's governing law and "the appropriate court in Utah County, Utah having competent jurisdiction" as the "sole jurisdiction and venue" for actions to enforce the operating agreement's terms and conditions.

---

1. For simplicity, when discussing the parties to this lawsuit we will refer to the appellees collectively as Pink Water.

¶4 The operating agreement also includes a provision granting members a right of first refusal to purchase the interest of another member if the member receives "a bona fide offer to purchase made by a third party." The member who receives a third-party offer and intends to accept it must provide the other members with written notice and a copy of the offer not less than forty-five days before the interest transfer date—this constitutes an offer of sale to the other members. The other members have thirty days after the receipt of notice to purchase the interest—in other words, a right of first refusal. The Smart Tech board (consisting of the elected managers) has "sole and absolute discretion" to grant or deny the sale of any part of a member's interest.

¶5 In a February 2022 agreement signed by all the members and managers of Smart Tech, Afsanteen was disassociated from Smart Tech—this included an end to any "right or claim to an interest of any form" that Afsanteen had in Smart Tech.

¶6 In March 2022, Creative Investment Group offered to purchase all of Pink Water's membership interest. Pink Water accepted the offer "subject to compliance with the right of first refusal provisions" in the operating agreement, and shortly thereafter, as required, Pink Water offered the purchase of its interest to the other members of Smart Tech. Monson exercised his right of first refusal to purchase the interest, after which Afsanteen also exercised its alleged right "to purchase Pink Water's membership interest in a pro rata share with Monson." There is some discrepancy in the record on what happened next. Some parts of the record state that "Pink Water refused to accept Monson's tender" and "attempted" to move forward with selling its interest to Creative Investment Group "despite failure to obtain [b]oard approval," while another part of the record says Pink Water attempted to move forward with selling its interest to

Afsanteen pursuant to Afsanteen's exercise of its alleged right of first refusal.[2]

¶7    Smart Tech's "Board of Managers"[3] did not recognize Afsanteen's offer or follow the steps required to handle more than one member exercising the right of first refusal. Nonetheless, Afsanteen deposited funds into a trust account held by Pink Water's attorney. And in June 2022, Pink Water signed an agreement to sell Afsanteen two-thirds of its total interest in Smart Tech. Afsanteen authorized Pink Water's attorney to release the necessary funds from the trust account to complete the purchase.[4]

---

2. It is unclear to us from the record whether the version of events that referenced Creative Investment Group, as articulated in the district court's later statement of the facts, was a typo and instead should have read that Pink Water attempted to move forward with the sale to *Afsanteen*. Ultimately, the parties agree that at some point Pink Water moved forward with an offer from Afsanteen to purchase two-thirds of its interest in Smart Tech. Thus, it is unnecessary to resolve this discrepancy in the record for purposes of this appeal.

3. The record is unclear about who made up the "Board of Managers" at this point. It appears that Afsanteen was disassociated from Smart Tech, but the record does not indicate if Salo remained a manager of Smart Tech apart from his involvement in Afsanteen or whether another individual (or no one) replaced him as a manager.

4. Salo contends that at no time did he, acting as Afsanteen's manager, authorize the offer for and eventual purchase of Pink Water's membership interest. He instead alleges that Tim Gibson, "the real party-in-interest" in Creative Investment Group, purported to act on behalf of Afsanteen without authorization.

(continued…)

¶8    In June 2022, Smart Tech and Monson filed a complaint against Pink Water, and they amended that complaint in March 2023. In the amended complaint, they sought (1) a declaratory judgment that "Afsanteen's purported exercise of a right of first refusal [was] without legal force and effect and that Pink Water's purported acceptance of such a right [was] likewise without legal force and effect and that it [was] not binding upon Smart Tech" and (2) a permanent injunction preventing the sale of Pink Water's interest to Afsanteen. Smart Tech and Monson also brought claims against Pink Water for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Smart Tech alone filed a motion for partial summary judgment, arguing that because Afsanteen had been disassociated, Afsanteen did not have a right of first refusal and, even if it did, Salo, as manager of Afsanteen, did not approve the purchase, making it invalid.

¶9    Before Pink Water filed its memorandum opposing the motion for partial summary judgment, Monson and Pink Water entered into a settlement agreement and filed a stipulated motion to dismiss the entire action with prejudice. Smart Tech was not part of that settlement agreement and did not join the stipulation. The next day, Smart Tech notified the court that it planned "to file a limited objection" to the motion to dismiss "within the time allowed."[5]

---

Because this factual discrepancy is not determinative in this appeal, our recitation of the facts assumes, without deciding, that Afsanteen's offer and purchase were made by someone acting with authority to do so.

5. Under rule 7 of the Utah Rules of Civil Procedure, a "nonmoving party may file a memorandum opposing [a] motion within 14 days after the motion is filed." Utah R. Civ. P. 7(d)(1).

(continued…)

¶10 Rather than waiting for Smart Tech's memorandum in opposition to the motion to dismiss the action and without the required request to submit for decision, the court granted Monson and Pink Water's motion the day after it was filed and dismissed the case with prejudice, including Smart Tech's claims. The court then signed the order prepared by Monson and Pink Water, which recited that "all claims asserted by Smart Tech" and "all claims Smart Tech could assert" in the action were "derivative claims which [were] extinguished" by the settlement agreement. The court did not indicate the procedural mechanism through which it reached this conclusion.

¶11 Smart Tech quickly filed a motion to alter, amend, or vacate the judgment under rules 59(e) and 60(b) of the Utah Rules of Civil Procedure. Smart Tech argued that its claims were independent of Monson's claims and that it was entitled to the opportunity to file an objection to the motion to dismiss. Pink Water opposed the motion, arguing that because the operating agreement establishes the right of first refusal specifically for Smart Tech's members and this case stems entirely from an alleged breach of Monson's right of first refusal, Smart Tech lacked standing to bring the claim for itself. The court denied Smart Tech's motion, explaining that while "Utah has not decided the issue of an LLC bringing suit for damages stemming from a legal claim specific to one of its members," other jurisdictions have decided that an LLC lacks standing in those circumstances. The court reasoned that because the sections of the operating agreement that Pink Water allegedly violated "were designed to protect the members," Smart Tech lacked standing to bring its claim. The court also rejected Smart Tech's argument that Pink Water violated the operating

---

Once briefing is completed, or the time to do so has expired, "either party may file a 'Request to Submit for Decision,' but, if no party files a request, the motion will not be submitted for decision." *Id.* R. 7(g).

agreement provision requiring board approval of interest transfers because Smart Tech did not assert "damages associated with such violation." Smart Tech appeals.

## ISSUE AND STANDARDS OF REVIEW

¶12    Smart Tech argues that the district court erred (and thus exceeded its discretion) when it denied Smart Tech's motion to alter, amend, or vacate the judgment based on the determination that Smart Tech lacked standing to pursue claims against Pink Water for declaratory judgment and damages. We generally consider standing a "mixed question because it involves the application of a legal standard to a particularized set of facts," but "the question of whether a given individual or association has standing to request a particular relief is primarily a question of law." *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 10, 424 P.3d 95 (cleaned up). "We review the factual determinations made by a trial court with deference. However, we afford minimal discretion to the trial court on a determination of whether a given set of facts fits the legal requirements for standing." *Id.* (cleaned up). We review a district court's denial of motions to alter, amend, or vacate a judgment for abuse of discretion. *See USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 31, 372 P.3d 629 (concerning a rule 59 motion); *Goodrich Mud Co. v. Tops Well Services, LLC*, 2023 UT App 118, ¶ 11, 537 P.3d 649 (concerning a rule 60(b) motion), *cert. denied*, 544 P.3d 456 (Utah 2024).

## ANALYSIS

¶13    This dispute centers around a motion to dismiss followed by a procedurally questionable decision made by the district court. Without the participation of Smart Tech, Monson and Pink Water entered into a settlement agreement and filed a stipulated motion to dismiss the whole action with prejudice. Under rule 7

of the Utah Rules of Civil Procedure, Smart Tech, as the nonmoving party, had fourteen days to file a memorandum opposing the motion to dismiss. Utah R. Civ. P. 7(d)(1). In fact—only one day after Monson and Pink Water filed the motion—Smart Tech notified the court that it intended to do just that, namely, file a memorandum in opposition. But that very same day, rather than waiting for Smart Tech's memorandum as our rules of civil procedure require, the court granted the motion to dismiss, entirely disposing of the case. Compounding this procedural misstep is the fact that the court granted the motion without receiving a request to submit from any party, as required by rule 7. *Id.* R. 7(g) ("[E]ither party may file a 'Request to Submit for Decision,' but, if no party files a request, the motion will not be submitted for decision."). Without providing any explanation of its reasoning or the procedural mechanism employed, the court's order simply stated that "all claims asserted by Smart Tech" and "all claims Smart Tech could assert" in the action were "derivative claims which [were] extinguished" by the settlement agreement. As we will explain, the court erred and exceeded its discretion in denying the post-judgment motion because the court either wrongly assumed or wrongly concluded on the record before it that all of Smart Tech's claims were derivative of Monson's and that Smart Tech thereby did not have standing to bring any of its claims.

¶14 The operating agreement's choice of law provision, by which the members of Smart Tech are bound, sets forth Wyoming law as the operating agreement's governing law and Utah County courts "having competent jurisdiction" as the "sole jurisdiction and venue" for actions to enforce the operating agreement's terms and conditions. "Matters of procedure in a contract action are governed by the law of the forum," which in this case is Utah. *See Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 13, 384 P.3d 221 (cleaned up). "A choice of law provision, in contrast, selects the substantive law that will govern a contract dispute," which in this

case is Wyoming law. *See id.* Utah courts have not yet determined whether standing is a substantive issue or a procedural issue in the choice of law context. And we will not confront the matter here because the differences in Utah and Wyoming standing laws do not change the outcome of this case.

¶15 "Utah standing law operates as gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution. By doing so, it ensures that courts confine themselves to the resolution of those disputes most effectively resolved through the judicial process." *Utah Chapter of the Sierra Club v. Utah Air Quality Board*, 2006 UT 74, ¶ 17, 148 P.3d 960 (cleaned up). A party has standing under Utah's traditional standing test if

> (1) it has a legally cognizable interest that has been or will be adversely affected by the challenged actions, (2) there is a causal relationship between the injury to the party, the challenged actions and the relief requested, and (3) the relief requested is substantially likely to redress the injury claimed.

*Living Rivers v. Executive Dir. of the Utah Dep't of Env't Quality*, 2017 UT 64, ¶ 28, 417 P.3d 57 (cleaned up).

¶16 Under Wyoming law, prudential standing, the equivalent to Utah's traditional standing, requires (1) "a justiciable controversy," with "parties having existing and genuine, as distinguished from theoretical, rights or interests"; (2) a "controversy . . . upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion"; (3) "a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in

interest, or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them"; and (4) "the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues." *HB Family LP v. Teton County Board of County Comm'rs*, 2020 WY 98, ¶ 18, 468 P.3d 1081 (cleaned up).

¶17     As we will show below, whether under Utah or Wyoming standards, Smart Tech has standing to bring its case.

A.     Smart Tech's Claims for Declaratory Relief Are Not Derivative

¶18     Under Wyoming law, a "limited liability company is bound by and may enforce the operating agreement, whether or not the company has itself manifested assent to the operating agreement." Wyo. Stat. § 17-29-111(a). This language matches the corresponding Utah law nearly exactly. *See* Utah Code § 48-3a-113(1) ("A limited liability company is bound by and may enforce the operating agreement, whether or not the limited liability company has itself manifested assent to the operating agreement."). These respective statutes make clear that an LLC holds the right to enforce its operating agreement. And the statutes have no language limiting the LLC to bringing only claims that are independent of any claims an individual LLC member may also have, nor do they have language requiring the LLC to show damages in order to enforce the operating agreement. Pink Water argues that because neither Utah nor Wyoming case law addresses the question of whether an LLC can enforce its operating agreement, persuasive authority from other jurisdictions is helpful. We do not agree, because such an argument does not confront the plain language of Utah's and

Wyoming's nearly identical statutes.[6] We also do not agree, because, as Smart Tech points out, none of the cases Pink Water

---

6. The cases cited by Pink Water do not explore, cite, or confront any statutory language similar to the Wyoming and Utah law applicable here. In fact, the only cited case that even considers any statutory language concerning LLCs is *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009), which recites Louisiana statutes that make clear that an LLC "as a separate legal entity" may not "bring an action for personal injuries on behalf of its members." *Id.* at *5. And, as we explain, this issue is not comparable to the issue before us.

Pink Water asserts that Wyoming's LLC statute "does not contain any provision similar" to Utah Code section 48-3a-113(1). This assertion is obviously wrong, since—as evidenced by our discussion above—the two codes have nearly verbatim provisions (Utah's version repeats "limited liability" before "company" in the second clause). Based on this lack of awareness, Pink Water turns to section 17-29-110(a)(i) of the Wyoming Statutes, which states, "Except as otherwise provided in [the following subsections], the operating agreement governs . . . [r]elations among the members as members and between the members and the limited liability company . . . ." Notably, Utah law has an identical statute. *Compare* Utah Code § 48-3a-112 (1)(a) ("Except as otherwise provided in [the following subsections], the operating agreement governs . . . relations among the members as members and between the members and the limited liability company . . . ."), *with* Wyo. Stat. § 17-29-110(a)(i). From this statute, Pink Water asserts that Wyoming law "contemplates situations where an operating agreement can be enforced by a member to protect a member's rights when the member's personal rights are impacted, or by the LLC to protect the LLC's rights. However, nothing within Wyoming's LLC statute authorizes the LLC to bring suit on a member's behalf to enforce a member's rights." But

(continued…)

cites address the issue before us. Again, the issue here is whether an LLC has standing to bring its own claim to enforce its operating agreement, namely, by seeking declaratory judgment that "Afsanteen's purported exercise of a right of first refusal [was] without legal force and effect and that Pink Water's purported acceptance of such a right [was] likewise without legal force and effect and that it [was] not binding upon Smart Tech." And unlike the case before us, the cases cited by Pink Water, and relied on by the district court, involve various claims brought by LLCs against third parties entirely unrelated to the LLCs' operating agreements.

¶19   In *Association of Merger Dealers, LLC v. Tosco Corp.*, 167 F. Supp. 2d 65 (D.D.C. 2001), after the merger of Exxon and Mobil was announced, a group of gas station dealers formed an LLC "to promote their common business interests with respect to the merger." *Id.* at 67. As part of a consent agreement with the Federal Trade Commission, approximately 1,740 gas stations were to be divested during the merger and another oil company agreed to acquire them. *Id.* The LLC negotiated with and sought assurances from this oil company that members of the LLC would "receive the right to purchase" these properties "under a current-use valuation." *Id.* at 68. However, after acquiring the properties, the oil company instead offered them to members of the LLC at a highly inflated rate. *Id.* The LLC filed suit against the oil company for breach of contract and promissory estoppel. *Id.* at 68–69. The court determined that the LLC lacked standing to bring its claim against the third-party oil company on behalf of its members. *Id.* at 70–75.

¶20   In *All Comp Construction Co., LLC v. Ford*, 2000 OK CIV APP 38, 999 P.2d 1122, an LLC was hired as a general contractor for a

---

in making this assertion, Pink Water ignores, apparently through lack of awareness, section 17-29-111 of the Wyoming Statutes, which we address in the present section.

project. *Id.* ¶ 1. The LLC hired a subcontractor to install a septic system. *Id.* The LLC brought a claim against the subcontractor, alleging that it was negligent in the installation of the system, which required repairs at the LLC's expense. *Id.* The LLC also sought damages for mental stress and anguish. *Id.* The court determined that an LLC is a "fictional 'person' for legal purposes" and thus cannot "be treated as a natural person that would be capable of experiencing emotions such as mental stress and anguish." *Id.* ¶ 5. Accordingly, the court determined that the action for damages was properly denied. *Id.*

¶21 Finally, in *In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969 (E.D. La. Dec. 4, 2009), a barge-towing company struck a well owned by an LLC, causing extensive damage and leading to a "spray of crude oil into the bayou." *Id.* at *1. The LLC sued, bringing several claims against the towing company, including one for individual damages suffered by its employees. *Id.* at *5. The court determined that "a limited liability company, as a separate legal entity, should not be permitted to bring an action for personal injuries on behalf of its members" and dismissed the claims. *Id.*

¶22 Unlike the situation before us, none of these cases had to do with an LLC enforcing the terms of its operating agreement; instead, each of them had to do with claims brought against a non-member third party. Here, with its claims, Smart Tech seeks to remedy Pink Water's alleged violation of *Smart Tech's own operating agreement* for selling two-thirds of its total interest in Smart Tech to Afsanteen, which was disassociated at the time and thus did not have a right of first refusal. There is no third party involved. The claim is between the LLC—Smart Tech—and its member—Pink Water—to enforce the operating agreement. The fact that Monson is no longer a party to this suit has no bearing on Smart Tech's ability to bring its claim. That is because under Wyoming and Utah law, an LLC has its own right to enforce its operating agreement, and Smart Tech's claim stands apart from

Monson's right of first refusal because its claim centers on non-compliance with the operating agreement by an alleged improper exercise of the right of first refusal by a non-member.

¶23   In sum, both Utah and Wyoming statutory law grant LLCs the right to bring their own claims to enforce their operating agreements, and the cases cited by Smart Tech in support of a contrary conclusion are inapposite. We therefore hold that Smart Tech's claims to enforce its operating agreement are not derivative claims and that Smart Tech has independent standing to bring those claims.

¶24   We now look at Utah's standing law. Given its right to enforce the operating agreement, Smart Tech has a "legally cognizable interest" that was adversely affected by Pink Water's sale of its interest to Afsanteen without board approval. *Living Rivers*, 2017 UT 64, ¶ 28. There is a "causal relationship" between this injury—the violation of the operating agreement—and the relief sought, such as the injunctive relief sought to preclude Afsanteen from being treated as a member and to deny the validity of the sale. *See id.* (cleaned up). Finally, such relief is "substantially likely" to redress the injury as it will resolve any violations of the operating agreement and allow Smart Tech to proceed with an operating agreement that is followed by its members. *See id.* (cleaned up).

¶25   Similarly, under Wyoming standing law, for the same reasons addressed above, Smart Tech has brought a "justiciable controversy" while holding an "existing and genuine . . . right[] or interest[]" in enforcing the operating agreement due to Pink Water's alleged violations. *HB Family LP*, 2020 WY 98, ¶ 18 (cleaned up). This controversy is one upon which the court may "effectively operate" as it does not involve a "purely political, administrative, philosophical or academic conclusion." *Id.* (cleaned up). The redress sought by Smart Tech will result in a "judicial determination" with the "force and effect of a final

judgment," and the proceedings are "genuinely adversary in character" between Smart Tech and Pink Water. *Id.* (cleaned up).

¶26    Thus, given the right bestowed upon LLCs by Wyoming and Utah statutory law to enforce their operating agreements and principles of Utah and Wyoming standing law generally, the district court erred in concluding that Smart Tech could not pursue its claims. Under either Utah or Wyoming law, Smart Tech has standing to bring its claims against its member Pink Water for violating the operating agreement.

B.    Smart Tech's Claims Either Do Not Require Damages or Damages Are Adequately Alleged

¶27    Pink Water argues that Smart Tech's claims fail "for lack of damages," an argument that the district court adopted. In its order of dismissal, the court determined that all of Smart Tech's claims were "derivative claims," which were "extinguished" by the settlement agreement. In its denial of Smart Tech's motion to alter, amend, or vacate the judgment, the court further reasoned that "Smart Tech has not asserted damages associated with [a] violation" of the operating agreement requirement to obtain board approval prior to interest transfers. And the district court determined that all other claims brought by Smart Tech stemmed from Monson's claims, which were resolved. Thus, the court concluded that "Smart Tech could not have prevailed in its pursuit for damages."

¶28    In the amended complaint, Smart Tech and Monson brought five claims against Pink Water. Not all of the claims were asserted by Smart Tech and Monson jointly; several claims were brought by Smart Tech individually. As we have already explained above, even as to the claims brought jointly, Smart Tech's claims are not derivative of Monson's because Smart Tech has its own, independent right to enforce the operating agreement. Again, Wyoming law and Utah law explicitly give an

LLC the right to enforce its operating agreement and include no requirement that the LLC allege that it suffered damages from the violation of the operating agreement independent of any damages suffered by its members. *See* Wyo. Stat. § 17-29-111(a); Utah Code § 48-3a-113(1). Despite this lack of a requirement that an LLC allege damages in order to pursue an action to enforce its operating agreement, we will now address each of the five counts below and explain why Smart Tech was either not required to allege damages or made a sufficient claim of damages to proceed with each of the claims. Because the court did not follow the procedural requirements of rule 7 of the Utah Rules of Civil Procedure and denied Smart Tech its opportunity to respond to the motion to dismiss, we do not know what the alleged damages are under each claim, only that damages have been claimed.

¶29   Count one is a claim for declaratory judgment that "Afsanteen's purported exercise of a right of first refusal [was] without legal force and effect and that Pink Water's purported acceptance of such a right [was] likewise without legal force and effect and that it [was] not binding upon Smart Tech." The elements required to seek a declaratory judgment do not demand an allegation of damages. *See Williamson v. Farrell*, 2019 UT App 123, ¶ 11, 447 P.3d 131 (explaining that to establish the threshold elements for declaratory judgment actions "(1) there must be a justiciable controversy presented for resolution; (2) the parties to the action must have interests that are adverse; (3) the party seeking relief must have a legally protectible interest; and (4) the issues presented must be ripe for judicial determination" (cleaned up)). Smart Tech, therefore, was not required to allege any damages to proceed with this claim.

¶30   Count two is a claim for breach of contract, which states that the "breach has damaged plaintiffs," referring to both Monson *and* Smart Tech "in an amount to be proven at trial."

¶31 Count three is a claim for breach of the implied covenant of good faith and fair dealing, which—making no mention of Monson—contends that "Smart Tech has been damaged in an amount to be proven at trial."

¶32 Count four is a promissory estoppel claim seeking injunctive relief to preclude Pink Water from "recognizing Afsanteen as a member and allowing Afsanteen to exercise rights" under the operating agreement that "are reserved only for members." The claim also asks the court to estop "Pink Water from treating Afsanteen as if Afsanteen were a member of Smart Tech and from denying the superiority of Monson's offer." Since this claim seeks only injunctive relief, no allegation of damages is required.

¶33 And, finally, count five is a claim for a permanent injunction individually sought by Smart Tech, not Monson, stating that "Smart Tech respectfully request[s] that this Court permanently enjoin Pink Water from selling its interest in Smart Tech to Afsanteen pursuant to the terms and conditions" of the operating agreement. As another claim seeking injunctive relief, no allegation of damages is required.

¶34 Given this context, we cannot summarily reach the same conclusion as the district court, which determined that Smart Tech has not been damaged as an LLC irrespective of damages suffered by Monson. For each of its claims, Smart Tech was either not required to show damages or has a right to seek and has sought its own damages (at least reading the complaint, which was all that was before the district court, in the light most favorable to Smart Tech) separate and apart from any sought by Monson. Furthermore, several of the claims were individual to Smart Tech as the LLC rather than to Monson. In short, none of Smart Tech's claims are derivative as a matter of law. Therefore, Smart Tech has standing to bring its claims against Pink Water.

CONCLUSION

¶35    For the foregoing reasons, we conclude that the district court abused its discretion in denying Smart Tech's motion to alter, amend, or vacate the judgment under rules 59(e) and 60(b) of the Utah Rules of Civil Procedure. We accordingly reverse and remand this matter for further proceedings consistent with this opinion.

———————