**2019 UT App 123**

## THE UTAH COURT OF APPEALS

THOMAS WILLIAMSON AND JENNIFER WILLIAMSON,
Appellants,
*v.*
ANNE FARRELL, DAVE FARRELL, AND LAURA BLACK,
Appellees.

Opinion
No. 20180471-CA
Filed July 18, 2019

Third District Court, Salt Lake Department
The Honorable Patrick Corum
No. 170902215

Erik A. Olson and Kevin M. Paulsen, Attorneys
for Appellants

J. Mark Gibb, Matthew J. Orme, and John R. Loftus,
Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGE KATE APPLEBY concurred. JUDGE GREGORY K. ORME
concurred, with opinion.

HARRIS, Judge:

¶1     Having been publicly accused by his siblings of abusing and stealing from their elderly mother, Thomas Williamson and his wife Jennifer (collectively, Plaintiffs) filed suit seeking a judicial declaration that they had not committed elder abuse or violated any fiduciary duties toward Thomas's mother. The district court dismissed Plaintiffs' claim, on the ground that litigation between the parties was ongoing elsewhere and that their dispute could be more efficiently handled there. Plaintiffs appeal, and we reverse.

BACKGROUND

¶2      Ruth Williamson (Mother) passed away in November 2016 at the age of ninety-one. At the time of her death, Mother had been residing with Thomas[1] and Jennifer in Utah County, Utah. Prior to her death, Mother had accumulated significant assets, and had executed multiple estate planning documents naming her six children (including Thomas) as beneficiaries of her estate.

¶3      Shortly after Mother's death, Thomas filed a petition in Utah's Fourth District Court (the Probate Action) seeking to formally probate Mother's estate and have himself appointed as personal representative. Two of Thomas's sisters—Anne Farrell (Anne) and Laura Black (Laura), both of whom reside in California—appeared in the Probate Action and filed an objection to Thomas's petition, alleging, among other things, that Thomas had abused Mother during the time Mother resided with him, and that he had engaged in various acts of self-dealing with regard to estate-related matters. In their objection, they made no mention of Jennifer. Their allegations of elder abuse were initially vague, but Anne and Laura stated in their objection that they were "compiling further evidence that [Thomas] engaged in elder abuse" and that they were "addressing that issue with California counsel toward the end of pursuing a formal action in that regard." A few weeks later, Anne's husband Dave Farrell (Dave) filed an affidavit in the Probate Action; the district court in this case described that affidavit as containing "numerous" and "specific" elder abuse allegations against Thomas, but noted that Dave's affidavit

---

1. As is our practice when parties share a last name or are part of the same family, we sometimes refer to them by their first names, with no disrespect intended by the apparent informality.

mentioned Jennifer only "in passing in a single paragraph" as Thomas's "wife."[2]

¶4 A few weeks later, on April 10, 2017, while the Probate Action was pending, Anne and Laura—along with other complainants—filed a lawsuit in California (the California Action) against Thomas, Jennifer, and eleven other defendants. The fifty-four-page complaint describes a litany of grievances involving the entire Williamson family, only a part of which involves allegations that Thomas and Jennifer engaged in elder abuse against Mother. The complaint contains specific allegations against Thomas, accusing him of stealing money from Mother and mistreating her while she was in his care, but contains only passing references to Jennifer, accusing her of acting "jointly" with Thomas in some of the actions complained of. Jennifer asked the California court to dismiss her from the California Action for lack of personal jurisdiction, and the California court agreed, dismissing all claims against Jennifer, without prejudice to refiling elsewhere. The California Action remains pending against Thomas; that court has not yet determined whether Thomas breached any duties toward Mother or her estate, or whether he abused her.

¶5 Given the pendency of the California Action, Anne and Laura asked Utah's Fourth District Court, acting as the probate court, to dismiss or stay the Probate Action pending the outcome of the California Action. The probate court refused to dismiss the Probate Action, but did enter an order staying proceedings in the Probate Action until the relevant issues in the California Action were adjudicated. It reasoned that "having these matters

---

2. We reference the district court's description of Dave's affidavit rather than the affidavit itself because, although the district court described the affidavit in its ruling, we have been unable to locate it in the record submitted to us on appeal.

adjudicated in California would avoid inconsistent results and best serve judicial efficiency and the rights of the parties." The probate court's determination to stay the Probate Action is not at issue in this appeal and, as far as the present record reveals, the Probate Action remains stayed, and no determination has yet been made in that court regarding any abuse or breach of duty on the part of Thomas or Jennifer.

¶6      On April 5, 2017, five days before the California Action was initiated, Plaintiffs filed the instant lawsuit, a declaratory judgment action seeking a judicial declaration that they "did not commit elder abuse" against Mother or "violate any statutory or common law duties owed" to her. Plaintiffs named as defendants Anne, Laura, and Dave (collectively, Defendants). A few months later, Defendants filed a motion asking the district court to dismiss[3] or stay the case, in light of the fact that the issues at the center of this declaratory judgment action were being litigated in the California Action.

¶7      After an initial round of briefing and oral argument, the district court scheduled a telephonic hearing for the purpose of announcing a ruling, and during that telephonic hearing the court announced that, after oral argument, it had located a case—*McRae & DeLand v. Feltch*, 669 P.2d 404 (Utah 1983)—not cited by the parties in their initial briefing, upon which it wanted supplemental briefing. After the parties each filed supplemental briefs addressing *McRae*, the district court issued a written ruling granting Defendants' motion for judgment on the pleadings, and

---

3. Because Defendants had already answered the complaint by the time they filed their motion, the motion was styled as a motion for judgment on the pleadings, filed pursuant to rule 12(c) of the Utah Rules of Civil Procedure, rather than a motion to dismiss for failure to state a claim, filed pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure.

therefore did not make a decision regarding Defendants' motion to stay proceedings.

ISSUE AND STANDARD OF REVIEW

¶8 Plaintiffs appeal the district court's order granting Defendants' motion for judgment on the pleadings and dismissing their declaratory judgment action. We review the grant of a motion for judgment on the pleadings for correctness, and will affirm "only if, as a matter of law, the nonmoving party could not prevail under the facts alleged." *MBNA Am. Bank, NA v. Williams*, 2006 UT App 432, ¶ 2, 147 P.3d 536 (quotation simplified). For purposes of our review, we "take[] the factual allegations of the nonmoving party as true, considering such facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving party." *Id.* (quotation simplified).

ANALYSIS

¶9 Courts generally have the duty and obligation to adjudicate all of the cases that come before them. *See Harvey v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 2017 UT 75, ¶ 116, 416 P.3d 401 (Lee, J., concurring in part and dissenting in part) ("When the parties file suit in a court that has both subject-matter jurisdiction over the dispute and personal jurisdiction over the parties, our courts have a general duty to exercise that jurisdiction."); *cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (stating that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them"); *Shopko Stores, Inc. v. Dutson*, 911 P.2d 980, 981 (Utah 1995) (requiring small claims courts to "entertain claims for relief meeting the explicit jurisdictional limits" established by statute). As a rule, courts generally do not have the luxury of

opting not to, at least in some manner, decide the cases they are assigned. The questions presented in this case are whether an exception to this general rule exists for declaratory judgment cases in Utah—that is, whether Utah judges have the option, under certain circumstances, to refuse to decide certain properly-filed declaratory judgment cases—and, if so, whether the district court properly exercised that option here. After reviewing the record in this case and applicable Utah Supreme Court case law, we answer the first question in the affirmative, but the second question in the negative, and therefore reverse.

¶10    For centuries, declaratory relief has been one type of remedy that courts have considered themselves empowered to provide. *See, e.g.*, Robert T. Sherwin, *Shoot First, Litigate Later: Declaratory Judgment Actions, Procedural Fencing, and Itchy Trigger Fingers*, 70 Okla. L. Rev. 793, 799–802 (2018) (discussing the rise of declaratory relief in American law); 26 C.J.S. *Declaratory Judgments* §§ 1–2 (2019) (same). Under current Utah law, judicial power to issue declaratory judgments has been codified in Utah's Declaratory Judgment Act (the Act), with our legislature specifically providing that Utah district courts have "the power to issue declaratory judgments determining rights, status, and other legal relations" within their jurisdiction, and that a lawsuit "may not be open to objection on the ground that a declaratory judgment or decree is prayed for." Utah Code Ann. § 78B-6-401(1) (LexisNexis 2018). This judicial power to issue declaratory judgments is broad, and is "not constitutionally restricted to 'cases' and 'controversies.'" *Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592.

¶11    Although the Act authorizes courts to issue declaratory judgments, it does not contain provisions setting forth the specific elements of a proper declaratory judgment claim; those elements remain governed by common-law judicial decisions. Indeed, although declaratory judgment actions are statutory in nature, "[t]he courts are not a forum for hearing academic

contentions or rendering advisory opinions," *Baird v. State*, 574 P.2d 713, 715 (Utah 1978), and therefore all actions "must meet the requisite justiciable and jurisdictional requirements of any action," *Boyle v. National Union Fire Ins. Co.*, 866 P.2d 595, 598 (Utah Ct. App. 1993). For these reasons, even after passage of the Act, our supreme court has continued to "require four threshold elements to be satisfied before" courts may "proceed with a declaratory judgment action." *Miller*, 2003 UT 12, ¶ 15. Those four elements are: (1) there must be "a justiciable controversy" presented for resolution; (2) the parties to the action must have interests that are adverse; (3) the party seeking relief must have "a legally protectible interest"; and (4) the issues presented must be "ripe for judicial determination." *Id.*

¶12    In this case, the district court determined that all four of these "threshold elements" were met, and Defendants do not challenge that determination on appeal. Therefore, we presume for purposes of our analysis that all four threshold requirements are indeed met here.

¶13    Despite determining that all four of the threshold requirements were satisfied, the district court nevertheless dismissed Plaintiffs' lawsuit, and offered both statutory and common-law reasons for doing so. First, it relied on section 404 of the Act, which provides that a district court "may refuse to render or enter a declaratory judgment" if that judgment "would not terminate the uncertainty or controversy giving rise to the proceeding." *See* Utah Code Ann. § 78B-6-404. Second, the court relied upon common-law authority, including *McRae & DeLand v. Feltch*, 669 P.2d 404 (Utah 1983), in dismissing the case on efficiency grounds.

¶14    The statutory avenue for dismissal does not apply here. Unlike the federal declaratory judgment statute, which bestows upon federal judges broad discretion to refuse to enter declaratory judgments, *see* 28 U.S.C. § 2201(a) (2012) (stating

generally that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added),[4] the Act bestows such discretion on Utah judges in only one narrow situation: when entry of the sought-after declaration "would not terminate the uncertainty or controversy giving rise to the proceeding," *see* Utah Code Ann. § 78B-6-404 (stating that a "court *may* refuse" to enter a declaratory judgment only where entry of such a judgment would not terminate the controversy (emphasis added)). The term "proceeding" is used here in the singular, indicating that it refers to the specific declaratory judgment action at hand, and not to any larger web of disputes between the parties; indeed, that is how the term "proceeding" is used throughout the Act. *See id.* §§ 78B-6-401, -403, -407, -411 (using the term "proceeding" to refer to one declaratory judgment action). Thus, the Act permits Utah judges to refrain from deciding declaratory judgment actions only where entry of the sought-after declaration would not end the controversy giving rise to the specific lawsuit pending before them.

¶15    In this case, the district court took too broad a view of its statutory authority to abdicate. It believed that the section 404 exception applied if entry of the sought-after declaration would

---

4. Because the language of the federal declaratory judgment act affords federal judges wider discretion to decline to enter declaratory judgments than does the language of the Act, federal case law establishing the parameters of federal courts' discretion under the federal declaratory judgment act is of limited usefulness here. *See, e.g.*, *Republic Ins. Co. v. Sinclair Oil Corp.*, 791 F. Supp. 278, 280 (D. Utah 1992) (analyzing the purposes of declaratory actions under the federal statute, and using several factors in determining "whether to allow a declaratory judgment action to proceed").

not terminate *all* the underlying disputes encircling these feuding parties, specifically grounding its ruling on a conclusion that "a judgment in this case would not conclude the litigation in the other cases." While the court's factual supposition is likely correct, it was posing the wrong question. A Utah district court is not statutorily empowered to decline to adjudicate a declaratory judgment action merely because the sought-after judgment would fail to establish global peace between the parties. A Utah district judge is statutorily empowered, under section 404, to dismiss an otherwise-properly-pled declaratory judgment action only if the requested declaration would fail to completely resolve the controversy giving rise to the specific lawsuit pending in that judge's court. *See, e.g.*, *Miller*, 2003 UT 12, ¶ 27 (concluding that a declaration about whether the defendant, a school teacher, had violated certain statutes and regulations would not "terminate the uncertainty or controversy between" the parties—and, indeed, would "proliferate rather than resolve controversy"—because the court lacked the "authority to fire" the defendant or "order the school board" or the "State Board of Education" to do so, and regardless of any declaration the court might issue, the defendant "would remain a teacher, students would continue to take her classes, and the school board would remain free to refuse action on [the] plaintiffs' complaints." (quotation simplified)).

¶16   In this situation, the requested declaratory judgment would indeed completely resolve the controversy giving rise to the specific "proceeding" pending before the court. That controversy concerns whether Plaintiffs abused or breached any duties toward Mother; in their complaint, Plaintiffs sought a declaration that they did not abuse or breach any duties toward Mother. A declaration to that effect may not have resolved every dispute within the Williamson family, or even all of the matters at issue in the California Action and the Probate Action, but it certainly would have effectively disposed of the controversy

underlying the "proceeding" pending before the court. Accordingly, there was no basis, pursuant to section 404, for the district court to decline to hear the case.

¶17    Nevertheless, district courts retain common-law authority to dismiss declaratory judgment actions, even apart from their authority set out in section 404 of the Act. Despite the Act's codification, common-law pronouncements still play a role in governing a district court's handling of declaratory judgment actions. *See, e.g., id.* ¶ 15 (setting forth four "threshold elements" for declaratory judgment actions, which elements do not appear anywhere in the Act). And our supreme court has, on at least two occasions, taken note of a district court's common-law authority to dismiss declaratory judgment actions. In *McRae*, the court stated as follows:

> Generally, jurisdiction of a declaratory judgment action will not be entertained if there is pending at the time of the commencement of the declaratory action another action or proceeding to which the same persons are parties, in which are involved and may be adjudicated the identical issues that are involved in the declaratory action.

*McRae & DeLand v. Feltch*, 669 P.2d 404, 405 (Utah 1983) (quotation simplified). The court noted that the rationale behind this rule "is to prohibit piecemeal litigation . . . and to prevent the needless proliferation of litigation." *Id.* In the years since *McRae*, our supreme court has reaffirmed that opinion's holding and reasoning. *See, e.g., Hercules, Inc. v. Utah State Tax Comm'n*, 1999 UT 12, ¶ 5, 974 P.2d 286. Thus, in cases where the same matters at issue in the declaratory judgment action are being litigated between the same parties in another action that was pending at the time the declaratory action was filed, Utah district courts retain discretion—grounded in the common law—

to dismiss declaratory judgment actions in the name of efficiency and judicial economy.

¶18    This case, however, does not present a proper situation for exercise of that common-law discretion, because two of the factual prerequisites necessary for exercise of that discretion are absent. The parties to the declaratory judgment action are—currently—not the same as the parties to either the California Action or the Probate Action. Jennifer has never been a party to the Probate Action, nor has she filed any papers in connection with that action. In the California Action, Jennifer was originally sued and accused of conspiring with her husband to abuse and steal from Mother. The California court eventually determined, however, that Jennifer was not subject to personal jurisdiction in California, and thus could not constitutionally be haled into court there. The claims against her were dismissed, but without prejudice to refiling in a proper forum. Thus, the claims against Jennifer remain live, in the sense that they could be refiled against her at any time in another location, and Jennifer—a Utah resident—chose to avail herself of Utah's Declaratory Judgment Act to file a lawsuit in the forum of her choice to preemptively adjudicate those claims. We discern nothing improper about Jennifer filing a declaratory judgment action under these circumstances.

¶19    The district court sidestepped this issue on the strength of its conclusions that "the allegations against [Jennifer] are virtually indistinguishable from and inextricably intertwined with those made against her husband," and that "a finding in either the [Probate Action] or the [California Action] that [Thomas] had not engaged in acts of elder abuse would necessarily include his wife as well." There is undoubtedly a close factual relationship between the allegations against Jennifer and at least some of the allegations against Thomas. But while a decision in the Probate Action or the California Action in favor of Thomas would (as a practical matter) likely clear Jennifer too,

the opposite is not true: a decision in one of the other cases *against* Thomas would not necessarily serve to either implicate or clear Jennifer.

¶20 But these issues obscure the more significant point in this case: Jennifer cannot be constitutionally compelled to litigate these issues in California, and she is entitled to have them litigated in a different forum. She has chosen Utah as the forum in which she would like those issues adjudicated, and her lawsuit is properly pled under the Act. The section 404 exception does not apply, because a grant of her requested relief would dispose of the controversy giving rise to the proceeding, and the common-law exception does not apply either, because there is currently no other pending case in which both (a) Jennifer is a party and (b) the relevant issues are being litigated. Jennifer is entitled to continue with her properly-pled lawsuit for declaratory relief regarding the live claims looming over her. The district court's decision to close the courthouse door to Jennifer under these circumstances was improper.

¶21 But even if Thomas were the only plaintiff in the declaratory judgment action, outright dismissal in deference to the California Action would still be improper, because another *McRae* prerequisite—that the California Action be filed first—is not satisfied here either. In *McRae*, our supreme court stated that a pending declaratory judgment action could be dismissed only when "there is pending at the time of the commencement of the declaratory action" a separate action involving the same parties and the same issues. *McRae*, 669 P.2d at 405 (quotation simplified). The California Action was not pending at the time of the commencement of the declaratory judgment action; it was filed five days later. The district court did not find the five-day difference dispositive, and declined to employ "a rote application of a 'first-to-file'" calculation. But a first-to-file metric is the touchstone set forth by *McRae*, and we are of course bound to follow our supreme court's pronouncements.

CONCLUSION

¶22    At some level, we sympathize with the district court's frustration that Thomas and his siblings seem to be using more than their share of judicial resources in at least two states. But this case does not present one of the rare instances in which a Utah court is empowered to entirely refuse to adjudicate a case pending before it. The district court's action dismissing Plaintiffs' case was improper and unfair, especially to Jennifer, and not supported by either the Act or common-law authority.

¶23    We therefore reverse the district court's order dismissing Plaintiffs' declaratory judgment action, and remand the matter for further proceedings. On remand, the district court may, upon motion, consider other options, including whether it should stay Plaintiffs' action—either partially or entirely—pending the outcome of the actions pending elsewhere.

———

ORME, Judge (concurring specially):

¶24    I concur in most of the analysis in the court's opinion but part ways with my colleagues when it comes to the appropriate recourse on remand. In the lead opinion's Conclusion, the implication is that any number of resolutions by the district court might be in order. I respectfully beg to differ.

¶25    The crux of the complaint for declaratory relief, which my colleagues agree was properly filed in Utah, is that Plaintiffs, Utah residents, did not commit elder abuse under the laws of Utah in connection with acts that occurred wholly within Utah while Mother resided in Utah. Not to put too fine a point on it, but in no sense is this California business, although California is appropriately concerned with issues concerning property located there. This is Utah business, pure and simple.

¶26   I am hard-pressed to see that any resolution on remand would be appropriate but this one: The Utah district court should proceed to adjudicate this action properly brought and properly pending before it. Duplication of judicial effort is of course to be avoided, and to the extent that resolution of the issues pending in the subsequently-brought California Action turns on whether Plaintiffs abused Mother, it is the California court that should defer to Utah's resolution of that issue—not the other way around.

————